MCCLINTOCK *v.* STATE OF INDIANA.

[No. 1068-S-171. Filed December 17, 1969.]

*Walter A. Cornell,* Sheridan, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, *Curtis C. Plopper,* Deputy Attorney General, for appellee.

JACKSON, J.—Appellant was charged by verified petition filed in the above named court with being a delinquent child. The court, after hearing, found that appellant had committed an act of delinquency, that she was fifteen years of age, and ordered her committed to the Indiana Girls School until she reached the age of twenty-one years. The special judge then suspended said order of commitment, placed appellant on probation, ordered her placed in the custody of her grandfather until June 6, 1968, then in the custody of her brother and ordered appellant's father to pay support for her. It is from this finding and judgment this appeal stems.

The verified petition involving appellant was filed November 1, 1967, in the office of the Clerk of the Hamilton Circuit Court and reads in pertinent part as follows:

"STATE OF INDIANA ⎫
                   ⎬ ss :
HAMILTON COUNTY ⎭

IN THE JUVENILE COURT OF HAMILTON COUNTY

In the Matter of Debra ⎫
McClintock a child under ⎬ J 3-151
eighteen years of age. ⎭

To the Judge of the Juvenile Court of Hamilton County, Indiana.

Your petitioner, the undersigned Frances McCory respectfully represents to the court as follows :

That Debra McClintock 14 11-7-52 Fe 6232 Adams Blvd.
        Name        Age Birthdate Sex      Address

Whose parents are: Father   Thomas McClintock
                   Mother   Jeanne McClintock
                   Address  6232 Adams Blvd.
                            Indianapolis, Indiana

And whose guardian or custodian is: ————————————
                                              Address

That said child on or about 29 day of November, 1967 commits an act which, if committed by an adult, would be a crime not punishable by death or life imprisonment, To-Wit: Delinquent child.

WHEREFORE, your petitioner prays that summons issue to said child Debra McClintock, and to the said Parents Thomas & Jeanne McClintock requiring them to appear before the Hamilton County Juvenile Court, or the Judge thereof, and show cause why said child ———————— should not be dealt with pursuant to the laws of the State of Indiana; and that the Court shall hear and determine the matter herein set forth and shall enter such judgment and orders as the Court may deem best and as will best serve the welfare of said child ————————.

                              Frances McCory
                              Petitioner

Subscribed and sworn to before me this 1 day of November, 1967.

My Commission expires:               Roland Guilkey
12-31-67                                   Clerk"

Trial was had, without formal reply to the petition, on the issues raised thereby. In the absence of a formal pleading to the petition, we treat the matter in the same manner as if a defendant in a criminal cause stands mute, in which case he is considered to have entered a plea of not guilty. In the instant case it is considered that appellant denied the averments of the petition and the State had the burden of proving the charges embodied in the petition.

At the conclusion of the evidence on the hearing there was filed on behalf of appellant on March 11, 1968, a motion to dismiss the cause and for the discharge of appellant. Such motion, omitting heading and signature, reads as follows:

"Comes now Juvenile herein, by counsel, and hearing on said cause being had, now moves the Court to dismiss said cause and for discharge of said Juvenile for the following reasons:

I. That there is insufficient evidence to sustain the allegation that the Juvenile herein is a delinquent child.

II. That the Hamilton Juvenile Court is without jurisdiction over the person of the Juvenile, and any finding by the Court in above cause as to the Juvenile herein being a delinquent child is contrary to law.
Walter A. Cornell
Attorney for Juvenile

## MEMORANDUM

### I. THERE IS INSUFFICIENT EVIDENCE TO SUSTAIN ALLEGATION THAT JUVENILE HEREIN IS A DELINQUENT CHILD.

The Prosecuting Attorney offered evidence by one Glen Shrock, State Trooper, that the Juvenile herein gave a written statement after being apprehended in Hamilton County, which statement was given after the Juvenile was duly warned and advised as to her legal rights concerning the giving of such statement. It was shown that at the time of such warning by the State Policeman, there were present the Juvenile, another juvenile, and three officers, including the witness, Glen Shrock. It was further shown that the parents of the Juvenile were not notified by anyone as to the apprehension of said Juvenile; that the parents were

not present at the time of such warning and advising of said Juvenile person prior to her giving any statement; it was further shown that no one was present, other than law officers, to give counsel or advice to said Juvenile; and that she was 14 years of age.

It is therefore submitted that the Juvenile herein was legally incapable of waiving her rights, and that any statement, oral or written, which she may have given to the police, was illegally and unlawfully obtained, and the objection by Juvenile's counsel to admission of such statement should have been sustained and such written statement and testimony of officers concerning any oral statement given by the Juvenile should have been suppressed.

It is further submitted that the Prosecuting Attorney having failed to offer any other evidence as to any acts committed by the Juvenile herein, upon which a finding could be made, that said Juvenile was a delinquent child, therefore the Court because of failure of proof of allegations in said petition should find that there was no evidence to sustain the charge and the charge against the Juvenile should be dismissed.

II. THE HAMILTON JUVENILE COURT IS WITHOUT JURISDICTION OVER THE PERSON OF THE JUVENILE HEREIN, AND ANY FINDING BY THIS COURT IN ABOVE CAUSE AS TO THE JUVENILE HEREIN BEING A DELINQUENT CHILD IS CONTRARY TO LAW.

Under Burns Ind. Stat. § 9-201 it is stated that an action shall be tried in the county in which the offense was committed.

The evidence submitted in above cause was to the effect that a certain automobile was stolen in Marion County, Indiana, and that the automobile was recovered in Hamilton County, Indiana.

If a theft is committed and property is taken into another county the Prosecution for the theft will not lie in the latter county. See *Martin* v. *State,* 176 Ind. 317, 95 N. E. 1001.

Failure to prove the venue in a criminal cause is fatal, such proof is necessary to show jurisdiction of the Court to try and determine the issue. See *Strickland* v. *State,* 217 Ind. 588, 29 N. E. 2d 950.

Although it is conceded that the matter herein is not a criminal matter as such, however it appears that it would be required to show that the juvenile herein was within the County or residing in the County when the alleged act

charging the Juvenile with being a delinquent child oc-curred. See Burns Ind. Stat. § 9-3208.

The testimony of officer Boots, Conservation Officer, was to the effect that he saw the Juvenile herein as a passenger in an automobile in Hamilton County, which automobile was allegedly stolen from Marion County, Indiana, some time prior to the seeing of the Juvenile herein in said car. There was no evidence offered to show that the Juvenile herein had taken the automobile from Marion County; that she was present at the time said automobile was stolen; that she was ever in possession of said automobile; that she ever had control of said automobile; that she in any way participated in the alleged crime which allegedly occurred in Marion County, Indiana, or participated in any alleged crime or act which if committed by an adult would be a crime in Hamilton County, Indiana.

It is therefore submitted that the Prosecuting Attorney, having failed to show that Juvenile herein committed any act, in Hamilton County, Indiana, which might be a crime if committed by an adult, or any act in said county by which Juvenile could be deemed to be a delinquent child, therefore the Hamilton Juvenile Court is without jurisdiction to make any finding as to the Juvenile being a delinquent child and any such finding would be contrary to law."

Thereafter, on May 29, 1968, the following proceedings were had:

"Comes now Debra McClintock, Juvenile, in person and by counsel and comes also the State of Indiana by the Deputy Prosecuting Attorney and this cause having here-tofore been submitted for hearing on a petition alleging juvenile delinquency and said juvenile by counsel having subsequently filed her motion to dismiss and motion for dis-charge, the Court now overrules said juvenile's motion to dismiss and her motion for discharge.

And the Court now being duly advised enters its finding and judgment that the allegations of said petition charging delinquency are true and that Debra McClintock has com-mitted an act of delinquency.

And the Court now on its finding and judgment further finds that Debra McClintock is 15 years of age and now orders that Debra McClintock be committed to the Indiana State Girls School until she reaches 21 years of age.

And the Court now suspends said order of commitment and places Debra McClintock on probation, the condition

of such probation being that if said Debra McClintock commits any further acts of delinquency or violates any laws, the commitment hereby suspended will be ordered executed.

WHEREAS, the said Debra McClintock, presently a ward of Marion Juvenile Court, it is now ordered that her custody remain with her maternal grandfather, John Kennedy until June 6, 1968, and that thereafter her custody be given to her brother, Gary L. Dooley, until further order of this Court.

IT IS FURTHER ORDERED by the Court that Thomas A. McClintock, father of said juvenile, shall pay all costs of transportation of said juvenile to and from Chicago, Illinois and in addition, shall pay to Gary L. Dooley, the sum of Thirty ($30.00) Dollars per week beginning June 7, 1968, and each week thereafter as and for support of said juvenile.

ALL OF WHICH IS ORDERED, ADJUDGED AND DECREED by the Court this 29th day of May, 1968."

On June 24, 1968, appellant filed a Motion For New Trial containing two specifications as follows:

"1. The Finding of the Court is not sustained by sufficient evidence.

2. The Finding of the Court is contrary to law."

The motion was accompanied by a memorandum in several lengthy paragraphs. The first of which challenges the sufficiency of the petition on the ground "[t]he Petition fails to state what act the juvenile was alleged to have committed."

Sub-paragraphs a, b and c of said paragraph relate to certain evidence and the statement of appellant, all of which will be discussed later and is here omitted for that reason. This portion of the memorandum is addressed to the first specification of the motion.

The second paragraph and the several sub-paragraphs of the memorandum are addressed to the second specification of the motion. Sub-paragraph (a) alleges: "The Court erred in overruling Juvenile's motion to suppress the statement set out above" referring to State's Exhibit No. 2 which will be

shown later herein. The allegation of sub-paragraph (b) "[t]he Court erred in overruling Juvenile's motion, after the close of the evidence to Dismiss said cause and to discharge said Juvenile." Sub-paragraph (c) alleges: "[t]he Proceedings from the time of arrest of the Juvenile herein until and including the filing of the petition against said Juvenile were contrary to the statutes governing the procedures in juvenile matters and the Court's Finding based on such procedures and said petition were contrary to law." These several sub-paragraphs are supported by pages of record far too long to incorporate herein, but will be discussed briefly hereafter.

The Motion for New Trial was overruled July 22, 1968.

Appellant's Assignment of Errors is as follows:

"1. The Juvenile Court erred in overruling Appellant's Motion for new trial.

2. The Finding of the Court is not supported by sufficient evidence.

3. The Finding of the Court is contrary to law.

4. The Juvenile Court erred in overruling appellant's motion to suppress.

5. The Juvenile Court erred in overruling appellant's motion to Dismiss and for Discharge."

State's Exhibit No. 1 reads as follows:

"STATE'S WARNING AND WAIVER Debby McClintock
Exhibit 6232 Adams Blvd.
#1 Warning as to Rights Indianapolis, Indiana
DOB 11-7-52

Before we ask you any questions, it is our duty as police officers to advise you of your rights and to warn you of the consequences of waiving your rights.

You have the absolute right to remain silent.

Anything you say to us can be used against you in court.

You have the right to talk to an attorney before answering any questions and to have an attorney present with you during questioning.

You have this same right to the advice and presence of an attorney whether you can afford to hire one or not. We

have no way of furnishing you with an attorney, but one will be appointed for you, if you wish, if and when you go to court.

If you decide to answer questions now without an attorney present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to an attorney.

### Waiver

I have read the above statment of my rights, and it has been read to me. I understand what my rights are. I wish to make a voluntary statement, and I do not want an attorney. No force, threats, or promises of any kind or nature have been used by anyone in any way to influence me to waive my rights. I am signing this statement after having been advised of my rights before any questions have been asked of me by the police.

Debra McClintock

### Certification

I hereby certify that the foregoing warning and waiver were read by me to the person who has affixed her signature above, and that she also read it and signed it in my presence this 29 day of October 1967, at 4:35 o'clock p.m. at Noblesville, Indiana.

Glen L. Shrock  ISP  PE 1249
Signature—Police Officer

#510

J. Bradley 1151
Witness"

State's Exhibit No. 2 reads as follows:

"STATE'S            Date October 29, 1967, Page No. 1
EXHIBIT
#2        DEBRA FRANCES McCLINTOCK

DM   Dennis Love met me at the Mobil station at 62nd and SR 37 at 1:00 pm today and we went to Glendale Shopping Center at Lerner Shops for me to pick up at (sic) dress that I had in lay-a-way. He was driving a blue 1965 Oldsmobile Dynamic 88 that he had told me the night before that he stole but not where he had stolen it. He told me that he stole it yesterday. After we left Glendale we went to a phone booth near a filling station and I called Sharon Ogle and then we went over to pick her up at corner near her

house. After we picked her up we went to Hamilton County where Denny stopped on Cumberland Rd. to fire a 22 cal. rifle at an empty house. He shot at the house about 6 times when I saw a policeman coming from the north and I told Denny and he turned the car around and we went north on Cumberland Rd. between 60-100 mph and when we came to 116th St. he was unable to stop and he wrecked the car. After the car stopped we grabbed our purses and ran.   DM

DM   I have been in trouble once before for running away from home and I am presently on probation from Marion County. My probation started on September 14, 1967.   DM

DM   Dennis has been in trouble before for arson, and for vehicle taking.   DM

DM Sharon did not know the car was stolen and she met Denny through me. I have known Denny since May of this year. There are several other things that Denny and I have been involved in. Denny and Lloyd Baker stole a Mercury Cougar-1967-on Emerson in Indianapolis and kept it 2 or 3 nights and left it at Glendale Shopping Center. Denny then stole a white 1965-66 Ford Galaxie on Fall Creek Blvd. and Denny, Lloyd and I were in Brown County when he wrecked it. I was with Denny when he stole a 1967 pale blue 1967 Mercury Monterey from 35th and 100, Kingston Square Apartments and we had that car with us when he broke into a house on Dearborn St. near US 31. He stole a 1965-66 Chevrolet Impala, Blue, from this house. Denny dumped the Chevrolet right after he stole it about 5 or 6 blocks from where it was stolen. Denny said that he ran it down into some water. He kept the Monterey about 4 or 5 days and left it at Jubilee City Shopping Center. I was with Denny when he broke into the house of my old boy friend at 4501 Brittany St. Indianapolis, Indiana. He took a purse from this house. Last night he shoplifted a hunting knife from Jubilee City but I did not know it until we got outside. I used a credit card that was stolen out of the house on Dearborn St. where we stole the Chevrolet Impala. Sharon did know the car was stolen regardless of what is stated earlier in this statement.   DM

STATEMENT TAKEN BY TROOPER GLEN L. SHROCK PE 1249

/s/ Glen L. Shrock  PE 1249

WITNESSED BY ROBERT BOOTS #83

/s/ Robert N. Boots
/s/ Debra Frances McClintock"

Conservation Dept.

For the purpose of this opinion we shall take appellee's summary of the evidence most favorable to the State as follows:

On November 29, 1967, Officer Boots, on duty in Hamilton County, observed an auto having license number 93H5029 parked across Cumberland Road. He saw a rifle protruding from the auto and he heard nine (9) shots. Boots drove up to the auto and told the driver he was under arrest and to stop. The driver then backed up his auto rapidly and drove up a gravel road. Later, Boots learned the idenity of the occupants. The Appellant was sitting in the middle of the front seat. Boots identified her in court. Another girl was on Appellant's right. A boy was on the left. He was Dennis Love. As Boots pursued the auto, he received a radio call that the auto was a stolen car. Another call told him there had been an accident. Upon arrival at the scene, he saw a green two door Olds wrecked. He identified it as the one he had just previously seen.

Carroll Lundy, a resident of Marion County, testified that on November 29, 1967, he owned a 1965 Olds two door green hardtop. When he awoke the next day his car was gone. He reported the car missing. He went to Noblesville and identified the wrecked car as his. It had the same license number and description.

Town Marshal Howard arrived at the scene of the wrecked Olds and saw the three occupants in a cornfield. He pursued them and found 2 females and one male crouching in the field. He identified Appellant in court as one of the girls.

Trooper Shrock arrived at the scene and found a wrecked 1965 Olds 2 door green car with license number 93H5029. The car was registered to Mr. Lundy.

Appellant's signed statement, State's Exhibit #2, admitted into evidence, recited that she met Dennis Love on October 29, 1967, (the date she signed the statement). He was driving a blue 1965 Olds Dynamic 88. He told her the night before that

he had stolen it that same day. They then picked up Sharon Ogle, and drove to Hamilton County where Dennis stopped on Cumberland Road to fire a .22 rifle at an empty house. He shot at the house about 6 times when she saw a policeman coming. She told Dennis and he turned the car around and drove north about 60-100 mph. He was unable to stop and he wrecked the car. She knew Dennis since May, 1967. Her statement then recites several prevoius escapades of auto theft.

The record is undisputed that at the time appellant signed the statement, State's Exhibit #2, she had already been placed under arrest; she was at the Noblesville Police Department; present at that time were State Police Officers Shrock and Bradley and Conservation Officer Boots along with the appellant and Sharon Ogle. All of the officers were adults. Ogle and appellant were minors and, in fact, at the time said statement was taken the officer taking the same specifically knew appellant to be fourteen (14) years of age. It further appears that just prior to the execution of State's Exhibit #2, the officers presented to and had appellant read and sign what is designated a *"WARNING AND WAIVER"* which was admitted in evidence as State's Exhibit #1. The same appears herein, *supra*.

We are of the opinion that the interrogation and obtaining of State's Exhibits No. 1 and 2, under the circumstances here delineated, vitiated this entire proceeding and requires the reversal of the judgment here appealed from The Supreme Court in the case of *In Re Gault,* 387 US 1 (1966), stated that

"It has long been recognized that the eliciting and use of confessions or admissions require careful scrutiny."

Further, in *Haley* v. *Ohio,* 332 US 596 (1946), Mr. Justice Douglas, speaking for the majority of the Court, said:

"* * * And when, as here, a mere child—an easy victim of the law—is before us, special care in scrutinizing the record must be used. Age 15 is a tender and difficult age * * *. That which would leave a man cold and unimpressed

can overawe and overwhelm a lad in his early teens. This is the period of great instability which the crisis of adolescence produces * * *. He needs counsel and support if he is not to become the victim first of fear, then of panic. He needs someone on whom to lean lest the overpowering presence of the law, as he knows it, crush him * * *. But we are told that this boy was advised of his constitutional rights before he signed the confession and that, knowing them, he nevertheless confessed. That assumes, however, that a boy of fifteen, without aid of counsel, would have a full appreciation of that advice and that on the facts of this record he had a freedom of choice. We cannot indulge those assumptions * * *. Formulas of respect for constitutional safeguards cannot prevail over the facts of life which contradict them."

Neither can we indulge in the assumption that the appellant here, a mere child of 14, had a full appreciation of that advice which would have been available to her had counsel been present at the time of her questioning and subsequent signing of the waiver and statement. The Court in *In Re Gault, supra,* makes known the fact that "The President's Crime Commission has recently recommended that in order to assure 'procedural justice for the child,' it is necessary that 'Counsel * * * be appointed as a matter of course wherever coercive action is a possibility, without requiring any affirmative choice by child or parent.' " In the case at bar, not only was counsel absent at the stationhouse, but the absence of the parents was conspicuous indeed. At the time of the taking of the statement no notice had been given or issued to appellant's parents of her arrest or of the fact that she was in custody of the police at the Noblesville Police Department. The admission by Officer Shrock that he obtained the names and addresses of appellant's parents but did not notify them because "* * * she (appellant) did not want them to know about it" seems shallow indeed when viewed in light of the language of *In Re Gault, supra,* wherein the Court concluded that:

"* * * the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with

respect to adults. We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique—but not in principle—depending upon the age of the child and the presence and competence of parents. If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright, or despair."

Appellant also argues that the court's finding that appellant committed a "delinquent act" is vague and indefinite as to what appellant committed and is, therefore, contrary to law. There is much case law authority in Indiana to support this contention. This Court in the case of *State ex rel. Jones* v. *Geckler, Judge* (1938), 214 Ind. 574, 16 N. E. 2d 875, held that "When a child is charged with delinquency, some specific act or conduct must be charged as constituting the delinquency * * *." This sentiment was echoed in the case of *In Re Coyle* (1951), 122 Ind. App. 217, 101 N. E. 2d 192, wherein the court held that:

"Juvenile court procedure has not been so far socialized and individual rights so far dimished that a child may be taken from its parents and placed in a state institution simply because some court might think that to be in the best interests of the state. It is not the province of the courts to determine generally what conditions or exigencies will warrant the state in seizing the children of its citizens. Some specific act or conduct must be charged as constituting the delinquency and the truth of such charge must be determined in an adversary proceeding."

The judgment of the Hamilton County Juvenile Court is reversed and the cause is remanded to said court for further proceedings not inconsistent with this opinion.

DeBruler, C.J., Hunter and Givan, JJ., concur; Arterburn, J., dissents with opinion.

## Dissenting Opinion

ARTERBURN, J.—I dissent for the reason that I differ with the basic philosophy and trend of the opinions of this Court and the United States Supreme Court in juvenile proceedings. The purpose of juvenile legislation is to get away from prosecuting a child as a criminal in a criminal proceeding. The proceedings were to give the judge and the court more of a parental relationship with the child for the purpose of reformation and discipline. We have stated that the proceedings were not criminal but civil in nature.

Now, however, we find the courts step by step converting these proceedings into nothing more than a criminal trial. Under the guise of saying that a child has all the constitutional rights of an adult, the courts have held that they have a right to a jury trial, to an attorney, and now they must be informed that they need not answer any questions when interrogated under the *Miranda* rule. Such proceedings, of course, have no relationship to parental supervision which is too important to an immature child. It does, however, encourage in that child arrogance and disrespect for authority when he knows that he will be defended in any escapades by taxpayers' money and a lawyer. The soundness of any principle is to test how well it works under all circumstances. If the basic reason for the present trend is that the child is entitled to all the constitutional rights of an adult, then certainly, when his parents determine to punish him he is entitled to have the *Miranda* rule stated to him and entitled to have an attorney at taxpayers' expense. The absurdity of the announced principle is evident at once, since the court in a juvenile proceeding (which is not supposed to be criminal) stands in the same position as a parent.

This trend of the courts will defeat itself, since it will eventually eliminate juvenile proceedings, and trial courts, since they have to conform to all the principles of a criminal

trial, will immediately transfer every juvenile case to the criminal side of the court and try the child as a criminal, thus giving him all the "safeguards" of the Constitution.

NOTE.—Reported in 253 N. E. 2d 233.