People of the State of Illinois, Plaintiff-Appellee, v. Willie Horton, Lester Horton, Minors, Defendants-Appellants.

Gen. No. 53,323.

First District, Second Division.

June 23, 1970.

Stanley J. Sacks, of Chicago, for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Joseph Romano, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

This is an appeal from an order of the Circuit Court of Cook County, Juvenile Division, entered upon a finding that Willie Horton and Lester Horton are delinquent minors. Willie Horton was admitted to probation for a period of one year and Lester Horton was committed to the Illinois Youth Commission.

Delinquency petition 66J(D)8738, filed against Willie Horton, charged that he was a delinquent minor in that he "knowingly obtained control over a case of Dutch Master Cigars of the value of $200, the property of the

Penn. R. R., which property the said respondent knew to have been stolen by another, intending to deprive the said owner permanently of the use and benefit of the said property at 5214 South Princeton Avenue." Delinquency petition 66J(D)6751 charged that Lester Horton was a delinquent minor in that he "without authority knowingly entered into two railroad cars of the Penn. R. R. in the vicinity of 48th & Shields with the intent to commit therein the crime of theft."

At the hearing on the delinquency petitions, the first witness called by the State was Joseph Peck, a security officer for the Pennsylvania Railroad, who testified as follows. At 11:35 a. m. on December 11, 1967, while performing his duties as security officer, he found that a railroad car numbered PRR 306730, containing a load of cigarettes destined for transfer to the Western Railroad had been broken into. The car was standing in the Pennsylvania Railroad classification yard near Forty-eighth Street and Princeton Avenue. The door seals had been broken and were lying on the ground. Further inspection revealed that thirteen cases of cigarettes were missing from the car. He reported his findings to the Chicago Police Department.

Officer Richard Skonieczny of the Chicago Police Department, the second witness called by the State, testified as follows. On December 11, 1967, he went to investigate a report of a disturbance created by teenagers at the rear of a home at 5244 Princeton Avenue. Upon his arrival at that address, he found neither a disturbance nor teenagers. He proceeded down the alley and entered the basement of the building located at 5214 Princeton, where he found Willie Horton and a case of cigars. Willie Horton was taken into custody and transported to the ninth district station, where he was turned over to the Juvenile Division.

On cross-examination, Officer Skonieczny testified that he entered the basement at 5214 Princeton because

a woman who appeared on the back porch of a building in the neighborhood pointed to it. Permission to enter the premises was not obtained from the owner prior to entry. Willie Horton does not reside at the address where he was discovered. Finally, Officer Skonieczny testified that the case of cigars discovered, which was in plain view, was torn open. It contained two thousand cigars but was not especially heavy. In the officer's opinion, it was not especially heavy and a person of Willie Horton's size could carry it without assistance. No cigars were found on Willie Horton's person.

Henry Geter, third witness called by the State, testified as follows. He is fourteen years old and in the sixth grade. Between ten and eleven a. m. on December 11, 1967, he, Lester Horton, Willie Horton, and Carnell Reynolds were in the vicinity of Forty-eighth and Shields. They decided to go up on the railroad tracks to see what they could get out of the cars standing there. Two cars were broken into and it was he who broke the seals. (Later he testified that Lester Horton and one Russell Smith, not previously mentioned, broke the seals. On cross-examination he testified that he did not see who broke the seals.) Once the seals were broken, Lester Horton and Russell Smith opened the doors and the boys, seeing that the cars contained boxes of cigarettes, began to remove the boxes. One case of cigars was also taken. He saw both Lester Horton and Willie Horton removing boxes from the railroad cars. Later in the day he went to the police and told them about the incident because he knew the police were looking for them.

On cross-examination, Geter testified that he had been charged as a result of his involvement in the theft and had been admitted to probation for one year. Subsequently, but prior to this hearing he had a conversation with an assistant state's attorney and was promised help, but the exact nature of the help was not specified. He was not in the basement when Willie Horton was

404

arrested. Prior to that time however, he, along with Russell Smith and Willie Horton, took a case of cigars into the basement. They called to Willie and when he did not answer they knew that something was wrong and fled. Once outside they saw a squad car, but did not see a policeman.

Detective Edward Quinlan of the Chicago Police Department, also called by the State, testified that at 10:30 p. m. on December 12, 1967, he arrested Lester Horton in his home. He took Lester, who was accompanied by his elder sister, to the police station where they were escorted into an office approximately nine feet by ten feet in size. The room contained two desks and four or five chairs. Also present in the room were Carnell Reynolds and his father, Henry Geter, and Russell Smith and his father. Due to lack of chairs, all of the youths remained standing. He advised the boys of their constitutional rights, glancing at, but not reading from, a card. Lester Horton was advised that he could not be required to say anything, that he was entitled to have an attorney, and that if he did not have a lawyer one would be obtained for him. He then advised Lester Horton that he and his brother Willie had been implicated in a burglary of the Pennsylvania Railroad by Henry Geter. Lester Horton then admitted the offense. Willie Horton was not present and Quinlan did not have a conversation with him.

On cross-examination, Detective Quinlan testified that in addition to those previously mentioned, he, his partner Robert Jones, Lt. Hessert of the railroad police, Youth Officer Gerardi, and Detective Flaherty were present in the room at the time the youths were advised of their constitutional rights and questioned. Finally, Detective Quinlan testified that the youths were advised of their constitutional rights as a body rather than individually. Neither Lester Horton nor his sister said anything following the warnings. Lester Horton did, however, nod

405

his head in a gesture usually intended as an affirmative response.

Lt. Emil Hessert, the final witness called by the State, testified that on December 11, 1967, he went to the police station and inspected a case of cigars. In response to questions by the court he also testified that subsequent to this inspection he was able to determine that the case of cigars in question had previously on that date been in the control and custody of the Pennsylvania Railroad.

Hessert also testified that he was present when the youths were questioned at the police station and that prior to the questioning Detective Quinlan advised them of their constitutional rights, stating that they had the right to remain silent, that anything they did say could be used against them in court, that they had a right to an attorney, that if they could not afford an attorney one would be provided for them and that they may waive each of these rights. Following the giving of the warnings, Lester Horton stated that he had been on the railroad property with several other boys when some cigars were being removed, but he did not state that he took anything. He merely admitted that he was present.

We consider first the appeal of Willie Horton, who has alleged that he was not proven to have committed the offense with which he was charged beyond a reasonable doubt. Several points have been raised in support of this allegation, but we need consider only one, as we deem it to be determinative of the appeal and require reversal.

 The basis of the delinquency petition filed against Willie Horton was that he committed the criminal offense of theft by receiving stolen property as defined in Ill Rev Stats (1967), c 38, § 16–1(d). That section provides that one commits this offense when he knowingly receives or obtains control over property which he knows to have been stolen by another. Thus, the actual

theft of the property must have been accomplished by some other person. One cannot be guilty of both the theft of certain property and of receiving that property once stolen. People v. Grodkiewicz, 16 Ill2d 192, 197, 157 NE2d 16, 19 (1959).

██ Willie Horton contends, and we must agree, that the evidence introduced against him, if believed, establishes that he took part in the burglary and theft which occurred in the Pennsylvania Railroad classification yard. Under the evidence introduced by the State, a finding that he committed the offenses of burglary and theft might have been made, but that evidence does not support the finding of the trial court that he received property knowing it to have been stolen by another, as charged. Since the finding upon which the trial court's determination of delinquency is not supported by the evidence, it follows that the judgment must be reversed. The argument advanced by the State that it was proper to find Willie Horton guilty of the offense charged must be rejected as requiring a strained interpretation of the evidence (it was argued that the evidence merely showed he aided others) and ignoring the law of criminal accountability. Likewise, the argument that Willie Horton has no standing to complaint since receiving stolen property is a less serious offense than either burglary or theft and since the statutory guidelines for sentencing criminals do not apply to juvenile proceedings is without merit. Such argument ignores the basic precept that a judgment must accord with the proof.

We consider now the contention of Lester Horton on appeal, that the trial court erred in denying his motion to strike that portion of Detective Quinlan's testimony relating to an admission made during questioning at the police station. He contends that refusal to strike the testimony was error as there was no showing that he was properly advised of his constitutional rights as

407

outlined in Miranda v. Arizona, 384 US 436, 86 S Ct 1602 (1966), or that he knowingly and intelligently waived those rights. He argues that, on the contrary, it is clear from the record that the circumstances surrounding the warnings which were given were such that even if full warnings had been given it would be impossible to find that they were knowingly and intelligently waived. He refers specifically to the fact that each of the youths were not advised of their rights individually, alleges that the warning that anything said might be used against them was not given, and that the crowded conditions in the room were such as to preclude reasoned judgment by a youth, as they operated to intensify the coercive atmosphere of the police station.

The argument of the State is confined to the questions of whether full and adequate Miranda warnings were given and whether Lester Horton knowingly and intelligently waived his rights. We have not been cited to, nor has our research disclosed binding precedent for the proposition that full Miranda warnings must be given to juveniles before admissions or statements made by them during custodial interrogation may be admitted into evidence against them in a juvenile proceeding. We, therefore, believe that the question of whether such warnings are required merits some discussion.

The Supreme Court decision in the case of In re Gault, 387 US 1, 87 S Ct 1428 (1967) established the proposition that the Fifth Amendment privilege against self-incrimination is applicable to juvenile proceedings where the result is likely to be the same or similar to that of a criminal proceeding; i. e., loss of freedom for a period of years. There the court reasoned that the "civil" label attached to juvenile proceedings was, for purposes of application of the Fifth Amendment privilege, mere trapping. It is of no consequence that the confinement may be at a farm or industrial school rather than a peni-

tentiary. The pivotal issue is whether there is a likelihood of loss of freedom for a period of years. This same reasoning has survived the confines of the Gault decision to the end that other constitutional protections have also been applied to juvenile proceedings through its application. See In re Urbasek, 38 Ill2d 535, 232 NE 2d 716 (1967); and In the Matter of Samuel Winship, 38 Law Week 4253, March 31, 1970, requiring that State must prove criminal act upon which charge of delinquency is based beyond a reasonable doubt; In re Marsh, 40 Ill2d 53, 237 NE2d 529 (1968), applying Fourth Amendment safeguards against unreasonable searches and seizures to juvenile proceedings; also held that indigent juvenile is entitled to free transcript of proceedings for purposes of appeal.

■ Each of the privileges and protections above mentioned was established in the area of criminal litigation. It would be illogical to say, on the one hand, that they are applicable to juvenile proceedings and, on the other, deny the procedural safeguards which guarantee their integrity. We believe that the rationale of the above-cited cases requires that the procedural safeguards established by Miranda in criminal proceedings are likewise applicable to juvenile proceedings where the basis of the charge of delinquency is the alleged commission of a criminal offense and it is likely that the proceedings may result in the minor's loss of freedom for a period of years.

■ We find the requirements of Miranda to have been satisfied in the instant case. The testimony of the witnesses Quinlan and Hessert is sufficient to establish that each of the required warnings were given prior to questioning. In addition, we are aware of no requirement that constitutional rights be waived in a prescribed manner. All that is necessary is that it be shown that the constitutional rights of the accused are knowingly

and intelligently waived. The evidence presented by the State admits of such a conclusion and, therefore, the order of the Circuit Court insofar as it relates to Lester Horton is affirmed and insofar as it relates to Willie Horton is reversed.

Order affirmed in part and reversed in part.

McCORMICK, P. J. and BURKE, J., concur.