In the Interest of John HENDERSON,
a child, Appellee.

STATE of Iowa, Appellee,

v.

Ida Mae HENDERSON, mother, Appellant.

No. 55080.

Supreme Court of Iowa.

June 29, 1972.

David P. Miller, Davenport, for appellant.

Alan R. Havercamp, Davenport, for child, appellee.

Richard C. Turner, Atty. Gen., Lorna L. Williams, Sp. Asst. Atty. Gen., and Thomas G. Schebler, Asst. County Atty., Davenport, for appellee.

REES, Justice.

This is an appeal by Ida Mae Henderson, mother of John Henderson, from a decree entered in a juvenile proceedings under chapter 232.2, The Code, 1966, as amended. The child, John, was found to be a dependent child within the contemplation of section 232.2(14) (b), and a delinquent child under the provisions of section 232.2(13) (c), The Code. Following a hearing, the court ordered John to be placed in the custody of an uncle in Elgin, Illinois, where he spent the summer months of 1970. John returned to Davenport to school in the fall, but was suspended in January, 1971, and ordered placed in the Iowa Annie Wittenmyer Home pending adjudication on the original petition.

Subsequent to a hearing on the petition, the trial court entered its findings of fact and conclusions of law finding expressly that John was both dependent and delinquent, and ordering him institutionalized at the Annie Wittenmyer Home. The mother appeals. We affirm.

 At the outset we feel impelled to comment on the fact counsel appointed to represent the child joined in this appeal with counsel for the State in the filing of the brief and argument. Separate counsel was appointed to represent the child as provided by section 232.28, The Code. In this appeal the child's counsel joined with the State, signed the same brief, and joined in State's argument. We are not disposed to criticize counsel for the child in this instance, but point out the necessity of complete independence on part of a child's counsel in such proceedings. He should stand alone, aloof from both the State and the parents. When in his professional judgment the best interests of the child coincide with the interests of another party, he should present those interests accordingly, but independently.

John Henderson was born in Arkansas on July 8, 1956, and moved to Iowa with his mother approximately two and one-half years before the institution of proceedings in this case. He is the second of Mrs. Henderson's ten children and her oldest son. The whereabouts of his father is unknown. The mother supports the family by means of a grant from the ADC program and by part time work as a maid. John had been attending Sudlow School in Davenport prior to his suspension and had been living at home with his mother and the other members of the family. He had attended Sudlow School since August of 1970, and prior to that time had attended Lincoln School.

We feel called upon to set forth a rather detailed narration of the facts and circumstances leading to the filing of the petition by a Scott County deputy probation officer on May 27, 1970, in which it was alleged John was both dependent and delinquent.

Mr. Spencer, principal of the Sudlow School since August of 1970, and prior to that principal of Lincoln School, testified on the hearing that John had been suspended for his actions and conduct relating to a girl student and for "other incidents". Spencer testified John had problems relating to his peer group—he responded by hitting, biting and using "socially unacceptable language in a school setting"; he was getting "more difficult to handle" in his contacts involving female students, and had directed his unwanted attentions, including one or more physical assaults and the use of obscene language over the telephone, upon one particular girl, causing her to fear for her safety and to develop an extremely nervous condition. John had a problem controlling his emotions and could possibly be re-admitted to the public schools but was probably headed for expulsion despite the willingness of the school authorities to work with him.

Miss Otting, a teacher of 17 years experience, who testified she "liked" John, expressed the view the boy needed help more than any of her other students; that he could not "make it" in the regular seventh grade because he was unable to read the

books at that level and seemed to do better work when he was in smaller classes.

Mr. Hebrank, a teacher of seven years experience, testified he had broken up several fights between John and other boys, that John had threatened "to get" people with whom he was provoked, and made no effort to control his temper. Hebrank advanced the view John needed special care and counseling.

Mr. Schalon, Senior Clinical Psychologist, Mental Health Center, testified John needed more than verbal therapy and would benefit from a structured setting outside the home.

Mr. Zager, a social worker, had prepared reports introduced as State's exhibits which indicated John's mother was unable to cope with the boy's problems, and that he should be removed from the home and institutionalized in order to make any progress.

Dr. Carole Buckwalter, a child psychologist employed by the Department of Social Services, testified John needed special care as he could not get along with others in his peer group, that he was having trouble in school, exercised poor judgment, and lacked impulse control. She stated John needed a structured environment where he could learn the social amenities, obtain academic and vocational help within his ability and that he would benefit by the presence of an adult male.

Upon the above summarized evidence, the court determined the child was both dependent and delinquent, and that his best interests required his placement in the Annie Wittenmyer Home.

In her appeal, the mother urges three propositions:

(1) Section 232.1 to section 232.62, The Code, are unconstitutional in light of the *Gault* decision (In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527);

(2) The same sections are violative of equal protection; and

(3) The petitioner failed to establish either delinquency or dependency beyond a reasonable doubt.

■ I. Proceedings of this nature are neither criminal nor penal in nature, but rather are special proceedings with the best interest of the child as the objective. In re Delaney (Iowa 1971), 185 N.W.2d 726, 728, and citations. Our review is *de novo*. Rule 334, Rules of Civil Procedure. We give weight to the findings of the trial court, but are not bound by them. Rule 344(f) (7), R.C.P.

■ II. Due process must be afforded in juvenile proceedings. In re Delaney, *supra*, 185 N.W.2d at 729; In re Interest of Chambers, 261 Iowa 31, 36, 152 N.W.2d 818, 822; McKeiver v. Pennsylvania, 403 U.S. 528, 543, 91 S.Ct. 1976, 1985, 29 L. Ed.2d 647; In re Winship, 397 U.S. 358, 359, 90 S.Ct. 1068, 1069–1070, 25 L.Ed.2d 368; In re Gault, *supra*, 387 U.S. at 30, 87 S.Ct. at 1445.

■ III. Appellant-mother advances several bases upon which she asserts the statute [Chapter 232, Code] is unconstitutional. We shall treat each brief point separately:

(1) Appellant asserts §§ 232.3, 232.4, 232.11 and 232.12, The Code, are unconstitutional in that they fail to provide adequate, fair, and effective notice of charges and proceedings and thus deny due process. More to the point, she asserts a petition must contain evidentiary material such as acts, time and place of occurrence thereof, names of witnesses who will appear for the petitioner, rather than merely stating ultimate facts. She further argues that the introduction of testimony concerning acts and conduct of the child subsequent to the filing of the petition is a denial of due process.

In In re Gault, *supra,* 387 U.S. at 33, 87 S.Ct. at 1446, the court said:

" * * * Notice, to comply with due process requirements, must be given suf-

ficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must 'set forth the alleged misconduct with particularity.' [Report by the President's Commission on Law Enforcement and Administration of Justice, 'The Challenge of Crime in a Free Society' (1967), p. 87]".

This court said, in Stubbs v. Hammond, 257 Iowa 1071, 135 N.W.2d 540, 543:

"Such delicate rights and duties cannot be decided against a parent without affording him due process of law. * * * He was entitled to notice. (citations). Notice of the hearing and an opportunity to be heard appropriate to the nature of the case is the most rudimentary demand of due process of law. (citations)."

Examination of the record in the matter before us establishes appellant was given notice of the hearing and had the opportunity to be fully heard and was represented by counsel at all times. She argues, however, the petition is not sufficient as it does not set out the "particularity" of the allegations, which she contends the statute requires.

■ Initially, we observe that a minor may be found dependent under three separate sub-sections of § 232.2(14) and may be found delinquent under four separate sub-sections of § 232.2(13), The Code. The petition in this case contained an allegation of delinquency specifically under § 232.2(13) (c) and an allegation of dependency under § 232.2(14) (b). We believe such specificity was sufficient to apprise appellant of the nature of the proceedings and to afford her due process. We observe further that while juvenile proceedings are special in nature, appellant had available to her a motion for more specific statement under rule 112, R.C.P.

■ With regard to appellant's complaint the court considered occurrences taking place after the filing of the petition,

we must simply state the purpose of the juvenile process is to provide care, education and training for children involved, and not to punish them. See § 232.1, Code; State v. Stueve, 260 Iowa 1023, 1028, 150 N.W.2d 597, 600. To effectively perform this function, the juvenile court must be able to have before it all available information regarding the juvenile regardless of when it transpired. We might note, parenthetically, it is just as possible for information respecting occurrences after the filing of the petition to work in favor of a juvenile as against him. The proceedings in this case were not based upon a criminal act, and we believe they were conducted in such a manner as provided the necessary "fundamental fairness" to all involved. Appellant's contention to the contrary we find is without merit.

■ (2) Appellant next contends §§ 232.6, 232.13, 232.27, 232.28, 232.30, 232.31, and 232.32, The Code, fail to afford adequate, fair and effective right to counsel as required by due process in a delinquency case resulting in commitment.

Appellant's contention in this regard is specious. She was at no time without effective representation of counsel, nor has she shown any instance during the times pertinent to our inquiry when her counsel was prevented from effectively and completely presenting her case. Section 232.5, The Code, specifically requires notice of hearing to apprise the child, the parent or guardian of their right to counsel. Section 232.6 allows the court discretion in calling *other* witnesses, but parent or guardian *shall* be entitled to subpoena the attendance of witnesses on his own part or on behalf of the child. It would appear, therefore, there is no discretion involved in who may be called by the parent or guardian in his behalf or on behalf of the child.

■ Appellant maintains the fact her counsel was not provided a copy of the report of examination conducted under the provisions of § 232.13, prevented her counsel from acting effectively. The section

makes no provision for withholding the reports from an attorney representing a parent, but in any case all of the reports involved in this matter were testified to by their preparers and all were subjected to thorough examination by counsel for all parties. There is no merit in appellant's contention in this area.

■ Appellant next contends the discretionary calling of witnesses under § 232.27, Code, is a violation of due process. There is no evidence in the record trial court refused to call any person requested by the appellant to testify. Furthermore, we have already noted the provisions of § 232.6 with respect to the calling of witnesses on the part of a parent or of a child.

■ Appellant contends § 232.28, The Code, calls for one counsel for child and parent or guardian together, and that in this regard it is unconstitutional. The meaning of the section is that both the child and parent or guardian shall be represented by counsel appointed by the court if the parties are without funds. In the matter before us, the child and the appellant had separate court-appointed counsel.

■ Appellant next claims the right to waive a record is a violation of due process. This contention is utterly frivolous, as in this case it was not waived; indeed, appellant later complains of the inadequate payment made to the reporter for the transcript.

■ (3) Appellant next asserts §§ 232.-3, 232.5, 232.13, 232.14, 232.27, 232.30, 232.-31, 232.55 and 232.57, The Code, fail to guarantee adequate, fair, and effective right to confrontation and cross-examination as is required by due process. In this regard we have examined the record at length and find the appellant directly examined or cross-examined each and every witness. Further, the witnesses Zager and Buckwalter, who filed reports, were called and examined. At no place in the record is there any indication counsel for appellant was refused the right of confrontation and cross-examination of the petitioner's witnesses. The hearing was held in accord with the principles announced in In re Gault, *supra*, 387 U.S. at 56, 87 S.Ct. at 1459; and Orcutt v. State (Iowa 1969), 173 N.W.2d 66, 73–74. No constitutional "shortcuts" were taken in the hearing in this matter. With regard to the introduction of the school records of John, In re Delaney, *supra*, 185 N.W.2d at 731, is controlling. All of the requirements for the admission of the school records as a business entry exception to the hearsay rule have been met. We note further all parties who had any part in the preparation of the school records, save one who was not subpoenaed by either party, testified at the hearing.

■ (4) Appellant next asserts chapter 232, by failing to guarantee adequate, fair and effective privilege against self-incrimination in a delinquency case resulting in commitment, does not meet the requirements of due process.

Again we quote from In re Gault, *supra,* 387 U.S. at 55, 87 S.Ct. at 1458, where the court said:

"We conclude that the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to adults. We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique—but not in principle—depending upon the age of the child and the presence and competence of parents. The participation of counsel will, of course, assist the police, Juvenile Courts and appellate tribunals in administering the privilege."

See also Haley v. State of Ohio, 332 U.S. 596, 599–600, 68 S.Ct. 302, 303, 92 L.Ed. 224; People v. Horton, 126 Ill.App.2d 401, 261 N.E.2d 693, 696–697 (1970); McClintock v. State (1969), 253 Ind. 333, 253 N.E.2d 233, 240–241; In the Interests of Carlo and Stasilowicz, 48 N.J. 224, 225 A. 2d 110 (1966); In the Matters of W. & S.,

19 N.Y.2d 55, 277 N.Y.S.2d 675, 224 N.E. 2d 102, 106–107 (1966).

All of the above cases involved juveniles before the court for the commission of public offenses. The petitions charging delinquency were based upon the alleged public offense. Haley v. Ohio involved a juvenile being tried as an adult. In the matter before us John Henderson was alleged to be delinquent and dependent because he was uncontrolled by reason of waywardness and habitual disobedience, and was in need of special care which his mother could not provide. No public offense was alleged. Further, the above cited cases involved custodial interrogation, which did not occur in the instant case.

Appellant contends the claimed self-incrimination in the matter under review here resulted from the examinations by the psychologist and psychiatrist without advising the child and mother of a right to refuse to speak, and from statements made by the mother and child to the probation officer when he visited with them at their home.

██ While we note and approve of the right to warnings in juvenile proceedings where a public offense is charged, we see a real distinction in the present proceedings against John Henderson.

██ We have already observed the purpose of juvenile proceedings is to help and assist the child, not to punish. The constitutional safeguard of "fundamental fairness" must be preserved in that setting. However, where there is no public offense charged we believe the requirement of advising the juvenile and his parents of his right to remain silent would frustrate the very purpose of the juvenile proceeding. Admittedly, upon the findings of the trial court the child may have to spend some time away from his home but such time will not be spent in a completely institutionalized setting. The record establishes visitation rights are lenient, and that the

average stay for a child at the Home is about one year.

We conclude, therefore, that in a juvenile proceeding where no public offense is charged, the question of self-incrimination is not presented. The claim of appellant in this regard is without merit.

██ (5) Appellant next argues the right to waive the making of a transcript in juvenile proceedings by virtue of § 232.-32 is a violation of due process. Her assertion is devoid of merit. No transcript was waived, in fact, one of appellant's other assertions is the failure of the trial court to order payment of excess reporting costs, over the amount permitted by statute. Appellant's counsel was required to pay an amount of $65.40 for the cost of reporting over and above the amount taxed as costs in this case. Due to the unusual circumstances at the time of the conduct of the proceedings, a reporter from the State of Illinois was called in to do reporting, as the court was at that time without a regular reporter. Her charges were in keeping with the standard charges made in Illinois. We believe the trial court is vested with authority and should order the payment of the sum of $65.40 to appellant or her counsel as additional costs of reporting resulting from no fault on the part of appellant. We therefore direct the court to so do, making such amount a part of the taxed costs.

██ (6) Appellant next asserts the filing of a motion to dismiss the petition based upon the several grounds rather than the filing of an answer in ordinary form was sufficient.

██ While we deem the filing of answers a better practice, § 232.3 requiring the filing of a petition in juvenile proceedings makes no mention of answer or the form thereof. Section 232.4 directs there shall be a hearing on each petition unless the parent or child or guardian admits the allegations of the petition. Section 232.14

provides no decree other than an order of discharge may be entered until the court has received and considered the social investigation report. Section 232.27 provides hearings are to be conducted without a jury and conducted in an informal manner. Section 232.31 provides the child, parents or guardian are "entitled" to be heard at the hearing and present evidence.

The purpose of a juvenile proceeding is to provide an informal, efficient hearing with regard to the allegations of the petition. Observance of the rules of civil procedure so far as form of answer, motions, and so forth, would help provide a more orderly setting. Appellant was entitled to present evidence at the hearing, and the sustaining of a motion for dismissal would not have been in keeping with either the letter or the spirit of the statute.

IV. The next contention of the appellant is that Chapter 232 of the Iowa Code is violative of the constitutional guarantee of equal protection, in that:

(a) The Iowa statute denies equal protection of the laws to a culturally deprived mother, specifically by imposing an unconstitutional provision of the act upon her and abridging her privilege and immunity to travel freely from state to state.

(b) The Iowa act denies equal protection of the laws to a culturally deprived mother by denying her the right to a jury trial on facts which deprived her of her personal rights of parenthood.

The record reflects appellant moved from Arkansas to Iowa with her family about two and a half years prior to the initiation of the proceedings with which we are here involved. Appellant contends the move to Iowa and the subsequent loss of her son to her because of his commitment to the Iowa Annie Wittenmyer Home by virtue of his having been found to be a dependent and delinquent child, denies her the privilege to move freely from state to state.

We see no merit in this contention. Chapter 232, The Code, is not directed at children of culturally deprived parents, or those who have recently moved to this state, or any other segment of our body politic. The statute is aimed solely at the care, control and guidance of children; their welfare and best interests govern. The legislature may make reasonable classifications, and so long as the law operates upon all within the same class there is uniformity in a constitutional sense. State v. Abodeely (Iowa 1970), 179 N.W.2d 347, 354–355, and citations. In this case there was no violation of the equal protection guarantee.

As this court said in State v. Ronek (Iowa 1970), 176 N.W.2d 153, 156–157:

" * * * The guaranty contained in the federal constitution as originally adopted merely limits the power of a state to exclude citizens of other states from the privileges granted to its own citizens, and does not deprive the states of their power to deal with the rights of residents or of ingress or egress therein except to the extent of that limitation. The privileges and immunities so protected are the fundamental privileges of citizenship. * * *"

There is no showing here that appellant or her child, John, were accorded more or less consideration than any other citizen.

We have also considered appellant's contention the fact a jury trial was not afforded is a further violation of her rights to equal protection. Section 232.27, The Code, specifically provides juvenile matters under chapter 232 are to be tried without a jury.

In McKeiver v. Pennsylvania, *supra*, 403 U.S. at 543–545, 91 S.Ct. at 1985–1986, the United States Supreme Court said:

"All the litigants here agree that the applicable due process standard in juvenile proceedings, as developed by *Gault* and *Winship*, is fundamental fairness.

* * * But one cannot say that in our legal system the jury is a necessary component of accurate factfinding. There is much to be said for it, to be sure, but we have been content to pursue other ways for determining facts. * * *

"* * *

"[W]e conclude that trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement."

We feel the foregoing negates appellant's assertion a jury trial is a matter of right in a juvenile proceeding.

V. Appellant points out § 232.31, The Code, only requires the evidence to be "clear and convincing", and does not require the facts to be established beyond a reasonable doubt. She cites In re Winship, *supra*, 397 U.S. at 368, 90 S.Ct. at 1075, and argues that case requires the finding of delinquency in a juvenile proceeding to be based upon evidence and proof beyond a reasonable doubt.

The facts upon which *Winship* was based are distinguishable from our case. In *Winship* the accused was charged with stealing (a public offense) and was subject to confinement in a penal institution for a term of up to six years. The very holding in *Winship* is bottomed on the fact the basis of the delinquency proceedings was a commission of a public offense.

Here, the basis of the delinquency proceedings is only that John Henderson was uncontrolled. He was not charged with the commission of a public offense, nor did the State seek to prove or even assert that he had committed a crime.

In *Winship, supra*, the court clearly indicated it was expressing no opinion upon the portions of the statute which deal with New York procedures governing children "in need of supervision". See In re Winship, *supra*, 397 U.S. at 359, 905 S.Ct.

at 1070, n. 1. When we view *Winship* and the matter before us in this perspective, it becomes readily apparent to us the matters are distinguishable. The court in *Winship* did not intend its opinion to cover a situation such as is presented in the case of John Henderson.

We have observed above the standard of due process in juvenile courts is "fundamental fairness". There is, to us, no departure from such standard when we use the "clear and convincing" requirement of proof as opposed to the "beyond reasonable doubt" standard when the basis of the proceedings is not the commission of a public offense.

We are satisfied, however, the term "clear and convincing" connotes the establishment of facts by more than a preponderance of the evidence, but something less than establishing a factual situation beyond a reasonable doubt. See Words and Phrases, Permanent Edition, Vol. 7, at 624–625; Black's Law Dictionary, Revised Fourth Edition, p. 317.

There is a strong presumption of constitutionality, and unless the party asserting it negates every reasonable basis for holding otherwise, the statute must be upheld. Brown Enterprises, Inc. v. Fulton (Iowa 1971), 192 N.W.2d 773, 776 and citations; State v. Abodeely, *supra*, 179 N.W.2d at 354 and citations; 16 Am.Jur.2d, Constitutional Law, §§ 137, 175; 16 C.J.S. Constitutional Law § 99. The appellant has not carried the burden of showing the unconstitutionality of Chapter 232 and the sections thereof assailed.

The evidence was sufficient to justify the trial court in finding John Henderson was both a dependent and delinquent child.

The case is, therefore, affirmed.

Affirmed.

MOORE, C. J., and LeGRAND and HARRIS, JJ., concur.

McCORMICK, J., concurs specially joined by MASON, RAWLINGS and REYNOLDSON, JJ.

UHLENHOPP, J., concurs in result.

McCORMICK, Justice (concurring specially).

I concur in the result but not the way it is reached.

I. The majority opinion goes far beyond necessities of the case. The only record made at trial raising constitutional issues was a pretrial motion to dismiss "amended" during trial. Chapter 232, The Code, was thereby alleged to infringe due process and equal protection by denying: (1) notice of charges; (2) right to counsel; (3) confrontation and cross-examination; (4) right against self-incrimination; (5) appellate review and transcript of proceedings; (6) jury trial; and (7) necessity of proof of delinquency beyond a reasonable doubt. The other issues discussed in the majority opinion were raised for the first time on appeal and should not be decided here. Cole v. City of Osceola, 179 N.W.2d 524, 528 (Iowa 1970); Prine v. Hovick, 176 N.W.2d 183, 185 (Iowa 1970).

In addition, the sole constitutional attack at trial was against the statute *on its face*. It was not attacked *as applied*. Therefore the sole test of constitutionality is what *may* be done under its authority rather than what *was* done. Chicago, R. I. & P. R. Co. v. Liddle, 253 Iowa 402, 112 N.W.2d 852 (1962). The majority's defense of its application in this case is unnecessary.

This appeal should decide whether chapter 232, The Code, offends due process and equal protection under Amendment XIV, United States Constitution, in the respects alleged, and nothing more.

Appellant's first five claims are answered in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). She correctly maintains Iowa juvenile courts must accord the rights therein recognized, and the majority opinion rightly decides chapter 232 does not deny them. The sixth claim (right to jury trial) is answered adversely in McKeiver v. Pennsylvania, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). That should have been enough to dispose of these six claims.

II. However, the majority goes further and in Division III(1) upholds the notice actually given in this case and in Division III(4) makes the right against self-incrimination unavailable to Iowa children charged with delinquency where the conduct would not be a public offense for an adult. These issues were not raised at trial and should not be decided here, but since the majority has discussed them I register my disagreement with the positions taken.

On the notice question it is conceded *Gault* requires advance notice setting forth the alleged misconduct with particularity. In re Gault, *supra*, 387 U.S. at 33, 87 S. Ct. 1428. Our statute comports with due process because it mandates such notice. Code § 232.3(1) requires the petition to set forth plainly "[t]he facts which bring the child within the purview of this chapter." Summons and notice must "recite briefly the substance * * * or shall have attached a copy of the petition." §§ 232.4, 232.5, The Code. In this case the statute was not followed. The petition alleged John was delinquent under § 232.2 (13) (c) because "uncontrolled by his parents by reason of being wayward or disobedient." It failed utterly to set forth the alleged conduct with particularity as required by *Gault*.

However, appellant's complaint about it is untimely. She should have attacked it by appropriate prehearing challenge so the trial court could have required the State to amend the petition to supply the particulars desired or could have furnished other

remedy. By participating in the hearing without objection to the particularity. of notice appellant waived her right to attack it. Notice was deficient but the issue is raised too late.

III. I also dissent from the majority's refusal to follow the plain mandate in *Gault* that "juvenile proceedings to determine 'delinquency,' which may lead to commitment to a state institution, must be regarded as 'criminal' for purposes of the privilege against self-incrimination." In re Gault, *supra*, 387 U.S. at 49, 87 S.Ct. at 1455. See Contemporary Studies Project: Juvenile Delinquency in Iowa, 53 Iowa L. Rev. 1119, 1145 (1968) (the privilege is applicable to juveniles subject to delinquency proceedings and possible commitment); Frey, Gault and Iowa Juvenile Justice, 17 Drake L.Rev. 53, 63 (1967) ("After *Gault*, each judge must now insure that the juvenile is extended his privilege against self-incrimination.").

The rule was restated in McKeiver v. Pennsylvania, *supra*, 403 U.S. at 533, 91 S.Ct. at 1980:

"Some of the constitutional requirements attendant upon the state criminal trial have equal application to that part of the state juvenile proceeding that is adjudicative in nature. Among these are * * * the privilege against self-incrimination."

The majority seeks to soften the blow by saying John may "only" be institutionalized for one year. Of course it could be longer. He could be placed in the Eldora training school. §§ 232.34(4), 242.5, 242.14, The Code. He could also be confined in the men's reformatory. § 218.91, The Code. See Wilson v. Coughlin, 259 Iowa 1163, 147 N.W.2d 175 (1966).

The authorities sought to be distinguished by the majority are controlling. I can find no case since *Gault* holding the privilege inapplicable in delinquency proceedings. Privilege applicability is not measured by the conduct serving as basis for the charge but by whether delinquency adjudication brings possible institutionalization. All Iowa delinquency cases fit this measure.

In this case there was no objection at trial based on the privilege. If evidence had been received subject to such objection, we could disregard any evidence as to which the objection was good. Our review is *de novo*. § 232.58, The Code; In re Morrison, 259 Iowa 301, 306, 144 N.W.2d 97, 100 (1966). Appellant's only complaint at trial was absence of affirmative statutory expression of the privilege. Of course, constitutional rights are available without statutory repetition. 16 Am.Jur.2d Constitutional Law § 149.

The majority erroneously holds the privilege unavailable, but since it was not invoked in this case the result is unaffected.

IV. I dissent from Division V which denies appellant's claim § 232.31, The Code, is unconstitutional because it permits delinquency adjudication upon clear and convincing evidence rather than proof beyond a reasonable doubt. In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), requires proof beyond a reasonable doubt if the conduct would be an adult public offense. The majority seeks to save the lesser standard where delinquency is predicated upon a claim the child is "uncontrolled" or "habitually disobedient" under § 232.2(13) (c). There is no rational basis for distinction. We cannot abdicate our responsibility to apply due process standards simply because the United States Supreme Court has not previously decided a case on exactly the same facts.

*Winship* did not reach the issue of constitutionality of New York procedures governing a "person in need of supervision." New York Family Court Act § 712 defines such child as "an habitual truant or * * * incorrigible, ungovernable or habitually disobedient and beyond the lawful control of parent or other lawful authori-

ty." Cf. § 232.2(13) (c), The Code. Since *Winship,* New York has required proof beyond a reasonable doubt both in delinquency and "person in need of supervision" hearings finding no real adjudicatory distinction between them. In re E., 68 Misc. 2d 487, 327 N.Y.S.2d 84, 86 (1971); see also In re D., 36 A.D.2d 970, 321 N.Y.S.2d 510 (1971). We should now say with New York, " * * * [W]e do not see how we can give some children less rights than others. Would this not be the case of saying that you have more rights when it is alleged that you have perpetrated more of a wrong?" In re E., *supra,* 327 N.Y.S.2d at 87.

All the reasons given in *Winship* for requiring proof beyond a reasonable doubt where conduct would be an adult public offense are equally applicable to all Iowa delinquency bases. See Kemplen v. State of Maryland, 428 F.2d 169, 172–175 (4th Cir. 1970); United States v. Costanzo, 395 F.2d 441, 443–445 (4th Cir. 1968); 68 Mich.L. Rev. 567 (1970). I find no jurisdiction since *Winship* which has adopted the peculiar and unjust dichotomy embraced by the majority here.

I believe § 232.31 is unconstitutional as violative of due process in permitting adjudication of delinquency upon clear and convincing evidence. The provision is severable and the remainder of the statute is unaffected.

However, I would not reverse the trial court. In this *de novo* appeal we are required to weigh the evidence anew. § 232.58, The Code. The evidence in this case satisfies the reasonable doubt standard and requires delinquency adjudication.

V. It is implicit in these recent developments affecting juvenile court procedures that contested delinquency hearings should be conducted in two phases, one adjudicatory and the other dispositional. Code § 232.14 seems to require it. See also 84 Harv.L.Rev. 1, 162 (1970) ("In *Winship* as well as *Gault* the court carefully isolated the adjudicatory stage from both the pretrial and dispositional stages * * *.") The adjudicatory hearing is solely to determine the merits of the delinquency allegation; the disposition hearing is to determine treatment if the claim has been proved. In re Wooten, 13 Md.App. 521, 284 A.2d 32 (1971).

This case was tried with mixed and confused purpose. Adjudicatory and dispositional issues were tried simultaneously. The record illustrates what *Gault* intended to eliminate from adjudicatory hearings. We should tell juvenile courts hereafter to use separate adjudicatory and disposition hearings.

VI. The majority has reached the right result for the wrong reasons. I concur only in the result.

MASON, RAWLINGS and REYNOLDSON, JJ., join in this special concurrence.

UHLENHOPP, Justice (concurring in result).

Our consideration should be limited to objections made in the trial court. Those objections consisted of a constitutional attack upon the statute *on its face.* As to those objections, I concur in division V of the court's opinion and in division I of the special concurrence.