# FIRST NATIONAL BANK OF ROGERSVILLE, Plaintiff-Appellee, v. HAWKINS COUNTY and State of Tennessee, Defendants-Appellants.
## —463 S.W.2d 946.

Eastern Section. March 11, 1970.

Certiorari Denied by Supreme Court July 6, 1970.

460

David M. Pack, Attorney General, Nashville, Winfield B. Hale, Jr., Rogersville, for defendants-appellants.

J. Edward Hyder, Tom H. Rogan, Rogersville, for plaintiff-appellee.

CARNEY, P.J. Hawkins County and the State of Tennessee have appealed from a judgment of $4,000.00 rendered against them in the Circuit Court of Hawkins County, Tennessee, in favor of the First National Bank of Rogersville. The Bank brought suit as an inverse condemnation to recover the value of a sign which was removed by the State of Tennessee pursuant to a condemnation proceeding for the widening of a highway. The State and County contended that it had paid for the sign once and that the Bank was estopped to sue for its value. The Trial Judge dismissed the plea of estoppel and directed a verdict in favor of the Bank.

The former president of the First National Bank of Rogersville, Charles C. Cowan, and wife recovered judg-

ment in the amount of $9,000.00 in the condemnation suit on March 4, 1968. The value of the sign was included in the judgment. A lien was impressed upon the recovery in favor of Honorable Tom H. Rogan and Honorable J. Edward Hyder, attorneys for the defendant landowners. Mr. Rogan and Mr. Hyder are attorneys for plaintiff Bank in the case at bar.

Charles Cowan was on March 4, 1968, and had been for some time, the president of the First National Bank of Rogersville. Mr. Rogan was the first president of the Bank and later Chairman of the Board. At the time of the trial he was a director. Mr. Hyder, the other attorney for Mr. Cowan, rendered a title opinion to the Tennessee Department of Highways certifying that Charles Cowan and wife, Eleanor Cowan, were the owners of the record title of the land being condemned. The sign advertising the Mt. Carmel First National Bank of Rogersville was on the parcel being condemned. His title opinion recited that there were no leases of record and no known unrecorded leases.

Cowan and wife owned a tract of land containing approximately 10,000 square feet in the Mt. Carmel shopping center in which was located the Mt. Carmel branch of the First National Bank of Rogersville. Fifteen hundred square feet were taken under the condemnation proceedings. The parcel taken did not include the bank building proper but it did include a portion of the ground on which was located a large metal sign advertising the First National Bank of Rogersville. The sign was set in the ground in concrete.

On September 20, 1968, six months after the judgment in the condemnation proceedings, the First National

Bank of Rogersville filed the inverse condemnation proceedings in the present cause averring that it had a leasehold on the 10,000 square feet of ground owned by Charles Cowan and wife. The declaration did not aver whether the leasehold was written or verbal. It did aver that the Bank owned an expensive sign which was removed by the State of Tennessee in February, 1968, pursuant to the construction of a highway in Hawkins County, Tennessee, and sought recovery of $6,000.00 as the value of the sign, damages from loss of advertising, etc.

The defendant, Hawkins County, Tennessee, filed a plea to the declaration in which it averred that no lease in favor of the First National Bank had ever been placed of record in the Register's office of Hawkins County, Tennessee; that it proceeded in the condemnation case only against Charles Cowan and wife, title holders of the property, on the basis of the certificate of Mr. Hyder, attorney for the plaintiff, that the property was free of all liens except for a deed of trust; that there were no recorded leases on the property nor were there any known unrecorded leases on the property. The plea further averred that during the course of the trial Cowan claimed title to the sign; that the First National Bank of Rogersville, of which Mr. Cowan was the president and Mr. Rogan was a director, never made any claim to the title to the sign which was being condemned until the present suit was filed; that Cowan and his attorneys contended in the condemnation trial that the sign was a part of the real estate being condemned and recovered a judgment which included the value of the sign.

Defendant Hawkins County contended below and in this court that plaintiff was estopped to make claim for

the sign. Upon motion of the plaintiffs the plea was stricken and the defendant was allowed to file a plea of not guilty to the plaintiff's action.

Upon the trial Mr. James Biggs, age 44, testified that prior to June, 1968, he had been manager of the Mt. Carmel branch of the First National Bank of Rogersville; that in June, 1968, Mr. Cowan resigned as president and that he, Biggs, was then elected president to succeed Mr. Cowan. Mr. Biggs, on direct examination, did not prove any leasehold, verbal or written, to the real estate. He only testified that the sign which had been removed by the State of Tennessee belonged to the First National Bank. On cross-examination Mr. Biggs answered that he knew that the strip of land on which the sign was located was being condemned by the State of Tennessee. Then upon objection by attorney for plaintiff the court refused to permit counsel for the State to cross-examine Mr. Biggs relative to the knowledge by Mr. Biggs and/or other officers of the Bank of the condemnation proceedings, etc.

Out of the presence of the jury the defendant was permitted to put into the record the testimony in the condemnation case in which Mr. Cowan proved that he had constructed and owned the Bank building located on the 10,000 square feet of property which he owned. He further testified that the sign which was located on the strip between the Bank building and the street which was being taken for highway purposes was his sign and that he, Cowan, valued it at $4,000.00. He further testified that he had no other place to conveniently locate the sign after the taking and claimed compensation for the entire loss of the sign.

Mr. Biggs was recalled to the stand and testified that he had an invoice which showed that the First National Bank paid for the sign in September, 1965. The invoice was not offered in evidence. He further testified that the sign was installed on property belonging to the president, Mr. Charles Cowan, and his wife, Mrs. Eleanor Cowan.

Attorney for Hawkins County called Mr. Hyder, the other attorney for the plaintiff, as a witness and Mr. Hyder was asked about the certificate of title which he had furnished the Tennessee Department of Highways showing title in Mr. and Mrs. Charles Cowan. On objection of Mr. Rogan, the Trial Court refused to permit any further examination of Mr. Hyder relating to his knowledge of the transaction, title to the sign, etc.

It was stipulated by the parties that if the plaintiff was entitled to recover anything, it was entitled to a judgment of $4,000.00, whereupon His Honor the Trial Judge directed the jury to return a verdict for $4,000.00 in favor of the plaintiff.

Assignments of error I and II insist that His Honor the Trial Judge was in error in striking defendant's plea that the Bank was estopped to claim title to the sign because the Bank, without objection, permitted its president to make claim for and collect the value of the sign in the condemnation proceeding. The record is entirely silent as to why Cowan resigned as president of the First National Bank in June, 1968. Attorneys for appellee, First National Bank, insist that the testimony in the condemnation case of State, ex rel. Hawkins County v. Cowan, et al., is not admissible in the case at bar because the Bank was not a party to the action and is

not chargeable with notice of any acts of Cowan in the case. They further contend that even though Cowan was the president of the First National Bank of Rogersville his knowledge and his actions were not imputable to the Bank because he was acting in his own behalf and in a manner that was adverse to the interest of the Bank, his principal, citing Smith v. Mercantile Bank, 132 Tenn. 147, 149, 177 S.W. 72. From the Smith case we quote the portion contained in appellee's brief:

"The principal is not ordinarily charged with the knowledge of the agent in a matter where the agent's interests are adverse to those of the principal. The rule that the principal is charged with the agent's knowledge is founded on the agent's duty to communicate all material information to his principal, and the presumption that he has done so. Such a presumption, however, cannot be indulged where the agent is acting in his own behalf, when his interest is antagonistic to that of the principal, 'and any conclusion drawn from a presumption that he has done so is contrary to all experience of human nature.' 3 R.C.L. 479. See, also, Wood v. Green, 131 Tenn. 583, 175 S.W. 1139; Provident, etc., Assur. Society v. Edmonds, 95 Tenn. 53, 31 S.W. 168; 2 C.J. 868."

Other authorities on agency cited by appellee are as follows:

"In *104 A.L.R. 1246*, there appears an annotation on the subject of: *'Imputing to Principal Knowledge of Agent Having Adverse Interest or Acting Antagonistically to Principal.'*

In this Annotation, after referring to the general rule that a principal is chargeable with notice to his

agent concerning a matter within the scope of the agency, the Annotation states:

> 'There is a well-established exception to this general rule, where the conduct or position of the agent is such as to raise a presumption that he would not communicate to the principal the facts in controversy, as where the agent is in reality acting in his own business or for his own personal interest and adversely to the principal, or for some other reason has a motive for or interest in concealing the facts from the principal.'

The same rule is stated in Restatement, Second, Agency for Sec. 279, as follows:

> 'The principal is not affected by the knowledge of an agent as to matters involved in a transaction in which the agent deals with the principal or another agent of the principal, as, or on account of, an adverse party.'

*Comment a.* to the above section of the *Restatement* is, in part, as follows:

'a. If, in the particular transaction, the person who has knowledge, although an agent in other matters, is not acting or purporting to act on account of the principal, but is acting for himself or for some other person, the principal is not affected by such knowledge. * * *' ''

Also, from 19 Am.Jur.2d, Corporations, 1265, page 672, we quote as follows:

"Knowledge of the board of directors which has the general management of the corporate affairs is of course

imputed to the corporation. Knowledge of some of the directors of a corporation, however, if not disclosed to the board, is not necessarily to be imputed to the corporation. If a director has no further authority than the position implies and is not at the time acting in behalf of the corporation, his knowledge cannot be imputed to it. A corporation is not charged with notice of facts known to a director in a transaction between him and the corporation in which he is acting for himself, and not for the corporation. * * *''

The record indicates that Mr. Biggs, the manager of the Mt. Carmel branch, knew that the sign was being claimed by the president, Mr. Cowan. Mr. Rogan, a director of the First National Bank, not only knew but, as attorney, assisted Mr. Cowan in obtaining a recovery for the value of the sign.

A bank director is a trustee for the stockholders. Lane & Co. v. Bank of West Tennessee, 56 Tenn. 419; McConnell v. Sprouse, 13 Tenn.App. 291. It is presumed that Mr. Rogan and Mr. Biggs were loyal to their cestui que trust, the Bank. 13 Michie's Digest, page 86, Section 21, Presumptions, Cases Cited. We must presume, in the absence of proof, that Mr. Rogan and Mr. Biggs did not breach their trust and that, if, in fact, Mr. Cowan was claiming title to the sign adversely to the Bank, they, in concert with other officers and directors of the Bank and for the Bank, acquiesced in Mr. Cowan, the president, receiving payment for the sign. They permitted the State to remove the sign without objection or notice of the Bank's claim. The inference is that the State removed and destroyed the sign. The Bank could have salvaged the sign and possibly used it elsewhere if it had asked the

State for it. It was of no value to the State because it advertised the Bank.

The principle of equitable estoppel is deeply ingrained in the substantive law of the State of Tennessee. We quote as follows from the Church of Christ v. McDonald, 180 Tenn. 86, 171 S.W.2d 817:

> "The grounds upon which the Chancellor dismissed the complainant's bill, that no intentional or wilful fraud is shown, is unsound. We think the weight of modern authority is that, even though no fraud is intended, yet one may be estopped from claiming property where by intentional concealment of facts he has induced another to act to his prejudice. It is unnecessary to state the well known essential elements which must exist which lie at the basis of the doctrine of equitable estoppel.

Mr. Pomeroy's Equity Jurisprudence, Vol. 3, p. 189, says:

> 'Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part, acquires some corresponding right, either of property, of contract, or of remedy.'

The learned author further says:

> 'It is not absolutely necessary that the conduct mentioned in the first subdivision should be done with

a fraudulent purpose or intent, or with an actual and fraudulent intention of deceiving the other party. The adoption of such an element as always essential would at once strike out some of the most familiar and best established instances of equitable estoppel.' Pomeroy's Eq.Jur., Vol. 3, pp. 193, 194.

The doctrine of estoppel is often spoken of as a branch of the law of fraud. This is true if and when 'fraud' is used in the general sense of what is 'inequitable' or 'unjust'; but it is not accurate if by fraud is meant deceit. Bispham's Principles of Equity, 10th Ed., sec. 280, p. 479.

Mr. Chief Justice Perley, in the leading case of Horn v. Cole, 51 N.H. 287-289, 12 Am.Rep. 111, says:

'The doctrine has not in equity been limited to cases where there was an actual intention to deceive. * * * The general current of our decisions on the subject tends to a liberal application of the doctrine for the suppression of fraud and dishonesty, and the promotion of justice and fair dealing.'

See, also, Rogers v. Colville, 145 Tenn. 650, 661, 238 S.W. 80.

The doctrine of equitable estoppel is founded upon the soundest principles of justice and morality, rather than upon technical rules of law. The intentional concealment of the truth often operates as an estoppel. 'If a man is silent when it is his duty to speak, he shall not be permitted to speak when it is his duty to be silent.' Bispham Eq., 10th Ed., sec. 284. While one is not in duty bound under all circumstances to speak out, we hold that, where one's silence enables him to acquire an unfair advantage over another in the set

tlement of property rights, it is his duty to speak. The foregoing principle has often been applied. A man who holds himself out as a partner is estopped, as against those who have dealt on the faith of such holding out, from denying the partnership. Under the same head fall cases in which a party has been held to be precluded from denying that he occupied a certain position by reason of his having permitted himself to be held out to others as having occupied it. Towne v. Sparks, 23 Neb. 142, 36 N.W. 376; Bridger's Case L.R., 9 Eq., 74; Washburn on Easements, 62, 63. See our own case of Electric Light & Power Co. v. Bristol Gas, Electric Light & Power Co., 99 Tenn. 371, 42 S.W. 19, 21, wherein the Court held that one 'will not be allowed to assert his lien to the prejudice of persons whom he has induced to believe that his debt has been satisfied, or that he will claim no lien and who, in that belief, have purchased that property on which the lien rests.' The Court further held the right to invoke the doctrine 'does not always rest on the intention of the party to be affected by it, but is dependent, rather, upon the reasonable or legitimate effect of his statement or conduct in the particular matter upon the course of [others].'

The term 'conduct', when applied to a person in relation to the modern doctrine of equitable estoppel, embraces not only ideas conveyed by words written or spoken and things actually done, but includes the silence of such person and his omission to act, as well. Wampol v. Yountz, 14 S.D. 334, 339, 85 N.W. 595, 86 Am.St.Rep. 765; footnote, 31 C.J.S., Estoppel, sec. 87, p. 305, quoting Farr v. Semmler, 24 S.D. 290, 123 N.W. 835, 838.

In Tobias v. Josiah Morris & Co., 126 Ala. 535, 28 So. 517, 522, it was said: 'Negligent silence may work an estoppel as effectively as an express representation. * * * So, too, acts or conduct, though nothing is said, if they are calculated to mislead, and do in fact mislead, will work an estoppel, notwithstanding there was no intention to do so.' "

The State was misled to its prejudice by the failure of the Bank to claim title to the sign until after the State had paid Mr. Cowan for the sign. His Honor the Trial Judge erroneously dismissed the State's plea of estoppel and erroneously rejected the evidence of the State relating to knowledge by the other Bank officers that Cowan claimed title to the sign. Assignments of error I and II are sustained.

█ Further, we hold that the plaintiff, First National Bank of Rogersville, irrespective of the elements of estoppel, failed to prove a prima facie case of ownership of the sign which was removed by the State of Tennessee. The Bank proved that it paid for the sign in 1965. The Bank permitted the sign to be installed on real estate which it did not own; the sign was permanently affixed to the real estate by being placed on iron poles sunk into the ground in concrete. It did not prove any agreement with Mr. Cowan and wife that the sign would remain personalty nor any agreement reserving to the Bank the right to remove the sign.

The Bank averred but did not prove a leasehold, either verbal or written, on the real estate involved in the condemnation. The Bank could have been tenants at will or tenants from day to day of the Bank building. There is

no evidence that the Bank was in possession of the particular spot of real estate on which the sign was located.

The sign was erected within a few feet of the front of the bank building. It carried the following legend in four separate panels, one above the other:

"1st
Mt. Carmel
BRANCH
1st NATIONAL
BANK
of Rogersville
NO
CHARGE
ON
CHECKING"

Mr. Cowan and wife owned the bank building and in the absence of express agreement between Cowan and the Bank that the Bank retained title to the sign, the title to the sign passed to Mr. Cowan and wife when affixed to the real estate by being set in concrete. See Dudzick v. Lewis, 175 Tenn. 246, 133 S.W.2d 496; City of Knoxville v. Hargis, 184 Tenn. 262, 198 S.W.2d 555.

The actions of Mr. Cowan, Mr. Rogan and Mr. Biggs, along with the certification of title by Mr. Hyder, all support the conclusion that there was no agreement between Cowan and wife and the Bank that the sign would remain personalty and the property of the Bank. Assignment of error III is sustained.

His Honor the Trial Judge was in error in directing a verdict in favor of the plaintiff and should have directed a verdict in favor of the defendant and dismissed the

plaintiff's suit. The judgment of the lower court is reversed and plaintiff's suit is dismissed. The costs in the court below and in this court are taxed to the First National Bank of Rogersville.

Matherne, and Taylor, JJ., concur.