In the Interest of Beverly Ann JOHNSON, a child, Appellant.

No. 3–60111.

Supreme Court of Iowa.

Aug. 31, 1977.

Ivan T. Webber, III, of Norman, Younggren & Webber, Keokuk, for appellant.

Richard C. Turner, Atty. Gen., Stephen C. Robinson, Sp. Asst. Atty. Gen., and George Cosson, Asst. Atty. Gen., for appellee.

Heard by MOORE, C. J., and RAWLINGS, REYNOLDSON, HARRIS and McCORMICK, JJ.

MOORE, Chief Justice.

This is a juvenile court proceeding in which the petition alleged Beverly Ann Johnson, age 15, was a child in need of assistance or delinquent in that she stole $110 from the Covenant House at Burlington and also there cut and slashed a sofa with a sharp instrument. By amendment it was claimed she stole a pair of shoes from a Burlington store.

A demand for trial by jury was made and denied. Upon an adjudicatory hearing without a jury, Beverly Ann was adjudged a delinquent child. Her custody was transferred to the department of social services.

Her sole contention on this appeal is that Code section 232.27, which provides all hearings in juvenile cases shall be without a jury, violates Article I, sections 9 and 10 of the Iowa Constitution. Section 9 provides that "the right of trial by jury shall remain inviolate." Section 10 secures the right of trial by jury "in all criminal prosecutions, and in cases involving the life, or liberty of an individual."

■ I. We begin our analysis with a recognition that proceedings in juvenile court are not prosecutions for crime. They are special proceedings which serve as an ameliorative alternative to criminal prosecution of children. *State v. White,* Iowa, 223 N.W.2d 173, 175; *In Re Henderson,* Iowa, 199 N.W.2d 111, 116; *In Re Delaney,* Iowa, 185 N.W.2d 726, 728; Code section 232.1. A child under jurisdiction of the juvenile court is not amenable to prosecution under the criminal law until she is

transferred for prosecution as an adult. *State v. Speck,* Iowa, 242 N.W.2d 287, 289; *Bergman v. Nelson,* Iowa, 241 N.W.2d 14, 15, 16; *State v. Anthony,* Iowa, 239 N.W.2d 850; *State v. White, supra* ; Code section 232.72.

██ II. Several constitutional procedural rights were delineated in the landmark decision of *In Re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527. It is now settled doctrine the juvenile is entitled to adequate written notice of the charges against him. We have previously held chapter 232 passes constitutional muster in this regard. *In Re Henderson, supra,* 199 N.W.2d 116, 117. Additionally, the juvenile has a right to counsel, *In re Henderson, supra* ; section 232.28; he also has the right to confront and cross-examine adverse witnesses. *In Re Delaney, supra,* Iowa, 185 N.W.2d 726. Furthermore he possesses the 5th Amendment right against incrimination. Where a confession is determined to have been involuntarily coerced, due process bars its use. *Interest of Thompson,* Iowa, 241 N.W.2d 2, 6; *Gallegos v. Colorado,* 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325; *Haley v. Ohio,* 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224.

Although the Supreme Court has determined the aforementioned constitutional requirements are applicable in a juvenile delinquency adjudication it has declined to engraft thereto the full panoply of rights constitutionally assured an adult accused of crime. *McKeiver v. Pennsylvania,* 403 U.S. 528, 533, 534, 91 S.Ct. 1976, 1980, 29 L.Ed.2d 647, 654; *In Re Gault,* 387 U.S. at 30, 87 S.Ct. at 1445, 18 L.Ed.2d at 548; *Kent v. United States,* 383 U.S. 541, 562, 86 S.Ct. 1045, 1057, 16 L.Ed.2d 84, 97, 98.

██ III. We are here guided by the United States Supreme Court's determination in *McKeiver v. Pennsylvania, supra,* that due process under the 14th Amendment does not require a jury trial in state juvenile proceedings. Unquestionably we must ultimately determine constitutional requirements in Iowa and are under no obligation to uphold a state statute merely because in the view of the Supreme Court

of the United States it is not unconstitutional. *Davenport Water Co. v. Iowa State Commerce Com'n,* Iowa, 190 N.W.2d 583, 593; *Iowa-Illinois G. & Elec. Co. v. Ft. Dodge,* 248 Iowa 1201, 1224, 85 N.W.2d 28, 41. However, where, as here, constitutional provisions contain a similar guarantee they are usually deemed to be identical in scope, import and purpose. *Davenport Water Co. v. Iowa State Commerce Com'n, supra; Graham v. Worthington,* 259 Iowa 845, 863, 146 N.W.2d 626, 638; *Dickinson v. Porter,* 240 Iowa 393, 400, 35 N.W.2d 66, 72. Thus, while under these circumstances we are not bound by the *McKeiver* decision, we may look to its rationale for such guidance as it may afford. *Shearer v. Perry Community Sch. Dist.,* Iowa, 236 N.W.2d 688, 691, 692; *Davenport Water Co. v. Iowa State Commerce Com'n, supra.*

In *McKeiver* the court refused to hold that a jury is a necessary component of accurate fact finding in the informal and basically nonadversarial process of juvenile hearings. In support of this result the court reasoned as follows:

"If the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system and, possibly, the public trial. \* \*.

"Finally, the arguments advanced by the juveniles here are, of course, the identical arguments that underlie the demand for the jury trial for criminal proceedings. The arguments necessarily equate the juvenile proceeding—or at least the adjudicative phase of it—with the criminal trial. *Whether they should be so equated is our issue.* Concern about the inapplicability of exclusionary and other rules of evidence, about the juvenile court judge's possible awareness of the juvenile's prior record and of the contents of the social file; about repeated appearances of the same familiar witnesses in the persons of juvenile and probation officers and social workers—all to the effect that this will create the likelihood of

pre-judgment—chooses to ignore, it seems to us, every aspect of fairness, of concern, of sympathy, and of paternal attention that the juvenile court system contemplates.

*"If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it."* (Emphasis supplied). 403 U.S. at 550, 551, 91 S.Ct. at 1988, 1989, 29 L.Ed.2d 663, 664.

IV. We have previously upheld the statutory predecessors of section 232.27 in *Wissenburg v. Bradley,* 209 Iowa 813, 816, 820, 229 N.W. 205, 206, 209, against constitutional challenge under Article I, section 9 of the Iowa Constitution. Notwithstanding appellant's contention to the contrary, we believe her argument was met and rejected there. In light of *McKeiver* we reaffirm our prior holding. Section 232.27 is not violative of Article I, section 9.

V. We now turn to juvenile's contention section 232.27 is violative of Article I, section 10 of our constitution which we have previously set forth.

In light of the foregoing discussion we first must reject the attempt to equate a juvenile adjudicatory hearing with a full scale criminal proceeding. *McKeiver v. Pennsylvania,* supra; *In Re Gault,* supra; *Kent v. United States,* supra; *State v. White,* supra.

However, because clearly a "liberty" interest is at stake in light of *Gault* and its progeny, we still must construe the second portion of this section of our Iowa Bill of Rights.

In construing our constitution we have stated it must be construed as a whole. *Gallarno v. Long,* 214 Iowa, 805, 819, 243 N.W. 719, 725. It is our duty, if fairly possible, to harmonize constitutional provisions. *Newby v. Woodbury County District Court,* 259 Iowa 1330, 1339, 147 N.W.2d 886, 892. Thus in the present context we must

attempt to harmonize Article 1, section 10 with Article I, section 9, previously discussed.

Furthermore, we recognize that unlike statutes, our constitution sets out broad general principles. A constitution is a living and vital instrument. Its very purpose is to endure for a long time and to meet conditions neither contemplated nor foreseeable at the time of its adoption. *Redmond v. Carter,* Iowa, 247 N.W.2d 268, 275 (LeGrand, J., concurring specially); *Bechtel v. City of Des Moines,* Iowa, 225 N.W.2d 326, 332. Thus the fact a separate juvenile court system was not in existence at the time our constitution was adopted in 1857 should not blindly mandate an absurd result because our forefathers had not yet seen fit to establish a separate juvenile court system. Sometimes, as here, the literal language must be disregarded because it does violence to the general meaning and intent of the enactment. 16 Am.Jur.2d Constitutional Law, section 76 at 258. Recently in *Pitcher v. Lakes Amusement Co.,* Iowa, 236 N.W.2d 333, 335, 336, we considered an attack on Article I, section 9 of our constitution discussed supra involving the right to trial by jury. There we said:

"Time has increasingly demonstrated it was illogical to freeze forever our conception of a jury trial. * * *.

" * * *. Constitutions must have enough flexibility so as to be interpreted in accordance with the public interest. This means they must meet and be applied to new and changing conditions. * * *."

We conclude it is not constitutionally required to inject a jury into the juvenile court setting.

Other jurisdictions which have considered this issue are in almost unanimous agreement that jury trials are *not* constitutionally required in juvenile proceedings. *Flippo v. State,* 49 Ala.App. 138, 269 So.2d 155; *M. v. Superior Court of Shasta County,* 4 Cal.3d 370, 93 Cal.Rptr. 752, 482 P.2d 664; *In Re T.R.S.,* 1 Cal.App.3d 178, 81 Cal.Rptr. 574; *In Re J.T.,* D.C., 290 A.2d 821, cert.

denied, 409 U.S. 986, 93 S.Ct. 339, 34 L.Ed.2d 252; *Robinson v. State*, 227 Ga. 140, 179 S.E.2d 248; *In Re Fucini*, 44 Ill.2d 305, 255 N.E.2d 380, appeal dismissed, 403 U.S. 925, 91 S.Ct. 2242, 29 L.Ed.2d 704; *Bible v. State*, 253 Ind. 373, 254 N.E.2d 319; *Dryden v. Commonwealth*, Ky., 435 S.W.2d 457; *State v. L\*\*\*\* D\*\*\*\**, Me., 320 A.2d 885; *In Re Johnson*, 254 Md. 517, 255 A.2d 419; *Welfare of J.E.C. v. State*, 302 Minn. 387, 225 N.W.2d 245 (by inference); *Hopkins v. Youth Court Of Issaquena County*, Miss., 227 So.2d 282; *In Re Fisher*, Mo., 468 S.W.2d 198; *In Re Geiger*, 184 Neb. 581, 169 N.W.2d 431; *In Re J.W.*, 57 N.J. 144, 270 A.2d 273; *In Re State ex rel. J.W.*, 106 N.J.Super. 129, 254 A.2d 334; *In Re D.*, 27 N.Y.2d 90, 313 N.Y.S.2d 704, 261 N.E.2d 627; *In Re Burrus*, 275 N.C. 517, 169 S.E.2d 879, aff'd sub nom., *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647; *In Re Agler*, 19 Ohio St.2d 70, 48 O.Ops.2d 85, 249 N.E.2d 808; *State v. Turner*, 253 Or. 235, 453 P.2d 910; *Commonwealth v. Johnson*, 211 Pa.Super. 62, 234 A.2d 9; *In Re Terry*, 438 Pa. 339, 265 A.2d 350, aff'd sub nom., *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647; *In Re McCloud*, 110 R.I. 431, 293 A.2d 512; *Estes v. Superior Court*, 73 Wash.2d 263, 438 P.2d 205. To the contrary are *RLR v. State*, Alaska, 487 P.2d 27; *Peyton v. Nord*, 78 N.M. 717, 437 P.2d 716; *Arwood v. State*, 62 Tenn.App. 459, 463 S.W.2d 943.

VI. In addition to the above authorities, several federal circuits have held there is no constitutional right to a jury trial under the Federal Juvenile Delinquency Act, Title 18, Section 5031 et seq. *United States v. Hill*, 4th Cir., 538 F.2d 1072; *United States v. Cuomo*, 5th Cir., 525 F.2d 1285, 1292; *United States v. Torres*, 2d Cir., 500 F.2d 944, 946, 947, 948; *United States v. Salcido-Medina*, 9th Cir., 483 F.2d 162, 164, cert. denied, 414 U.S. 1070, 94 S.Ct. 582, 38 L.Ed.2d 476; *United States v. King*, 6th Cir., 482 F.2d 454, 456, cert. denied, 414 U.S. 1076, 94 S.Ct. 594, 38 L.Ed.2d 483; *Cotton v. United States*, 8th Cir., 446 F.2d 107, 110.

We note the Uniform Juvenile Court Act, section 24, stops short of proposing the jury trial for juvenile proceedings.

VII. In the massive rewrite of the Iowa Juvenile Justice Law passed by the House in this past session of the legislature, 67 G.A. (1977 Session), H. F. 248, that branch of the legislature saw fit to retain the juvenile judge as the sole trier of fact at the adjudication hearing in recognition of the importance of retaining a true distinction between juvenile matters and full scale criminal trial proceedings. This conclusion was reached while at the same time protecting the juvenile's rights through numerous statutory safeguards.

VIII. After careful consideration of the case law, the uniqueness of our juvenile justice system and the guidelines formulated by the United States Supreme Court, we conclude a juvenile is not constitutionally entitled to a trial by jury at a delinquency hearing under our constitution.

In oral argument appellant's counsel relied heavily on *State ex rel. Shaw v. Breon*, 244 Iowa 49, 55 N.W.2d 565. It is not controlling here. However in view of the principles and holdings set out above, we now overrule that case.

AFFIRMED.

All Justices concur except McCORMICK, J., who concurs specially.

McCORMICK, Justice (concurring specially).

The question here is whether the denial of jury trials in delinquency cases infringes Ia.Const. Art. I § 9 or Ia.Const. Art. I § 10. I concur in the result but not entirely in the basis of the majority opinion.

I. *Ia.Const. Art. I § 9.* As noted by the court, this court held in *Wissenburg v. Bradley*, 209 Iowa 813, 229 N.W. 205 (1929), the requirement of Ia.Const. Art. I § 9 that the right to jury trial "shall remain inviolate" is not infringed by denial of jury trials in delinquency cases. The court reasoned the provision is not violated because juvenile proceedings are analogous to guardianship proceedings at common law which did not require trial by jury at the time the Constitution was adopted. In characterizing a delinquency action the court said:

The action is, in a sense, a special proceeding provided by statute, wherein the state, by virtue of its authority as *parens patriae*, takes jurisdiction of the incorrigible child, and commits it, not to jail for punishment, but to a reformatory for its care, education, and training. 209 Iowa at 816, 229 N.W. at 207.

In the present case the juvenile calls this reasoning spurious, asserting the United States Supreme Court has rejected it. She contends a delinquency proceeding is a criminal trial in which a child had a right to trial by jury at common law when the Constitution was adopted. Therefore, she argues, denial of jury trial in a delinquency action does infringe Ia.Const. Art. I § 9.

Four cases of the United States Supreme Court are significant in determining whether a constitutionally tenable distinction can be said any longer to exist between a delinquency proceeding and a criminal trial. They are *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

In *Kent* the Court noted the discrepancy between theory and practice in the juvenile system. The Court said:

> While there can be no doubt of the original laudable purpose of juvenile courts, studies and critiques in recent years raise serious questions as to whether actual performance measures well enough against theoretical purpose to make tolerable the immunity of the process from the reach of constitutional guaranties applicable to adults. There is much evidence that some juvenile courts * * * lack the personnel, facilities and techniques to perform adequately as representatives of the State in a *parens patriae* capacity, at least with respect to children charged with law violation. There is evidence, in fact, that there may be grounds for concern that the child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children. 383 U.S. at 555, 86 S.Ct. at 1054, 16 L.Ed.2d at 94.

In *Gault* the Court repeated and expanded its criticism of the juvenile court system in this country. In discussing the parens patriae concept, it said:

> The Latin phrase proved to be a great help to those who sought to rationalize the exclusion of juveniles from the constitutional scheme; but its meaning its murky and its historic credentials are of dubious relevance. 387 U.S. at 16, 87 S.Ct. at 1437–1438, 18 L.Ed.2d at 540.

Although the Court said the constitutional and theoretical basis of the juvenile court system is debatable, it stopped short of holding that no constitutionally tenable ground distinguishes delinquency proceedings from criminal trials. The Court imposed a number of due process safeguards on juvenile proceedings but insisted its holding would not "compel the States to abandon or displace any of the substantive benefits of the juvenile process." 387 U.S. at 21, 87 S.Ct. at 1440, 18 L.Ed.2d at 543.

In *Winship* the Court carried *Gault* one step further, imposing the standard of proof beyond a reasonable doubt on delinquency adjudications as an additional requirement of due process. The Court again alleged no risk existed that the beneficial aspects of the juvenile process would be destroyed.

Finally, in *McKeiver*, a plurality of the Court said its decisions "do not spell the doom of the juvenile court * * *." 403 U.S. at 534, 91 S.Ct. at 1981, 29 L.Ed.2d at 654. The plurality noted that "the juvenile court proceeding has not yet been held to be a 'criminal prosecution', within the meaning and reach of the Sixth Amendment, and also has not yet been regarded as devoid of criminal aspects merely because it usually has been given the civil label." 403 U.S. at 541, 91 S.Ct. at 1984, 29 L.Ed.2d at 658. The plurality rejected the "wooden approach" of calling the juvenile proceeding civil or criminal and instead proceeded to decide that due process did not require jury

trials in delinquency proceedings as a matter of fundamental fairness.

The result of *Kent, Gault, Winship* and *McKeiver* is that, contrary to the juvenile's contention in the present case, a constitutionally tenable distinction still exists between delinquency actions and criminal cases. Therefore, even though juveniles have most of the protections given those accused of crime as a requirement of due process, the juvenile proceeding can still be placed outside the class of cases in which the right to trial by jury existed at common law. The rationale of our *Wissenburg* case has been eroded but not destroyed. It is still viable. See *Fucini v. Illinois*, 44 Ill.2d 305, 255 N.E.2d 380 (1970), appeal dismissed, 403 U.S. 925, 91 S.Ct. 2242, 29 L.Ed.2d 704 (1971); *Bible v. State*, 253 Ind. 373, 254 N.E.2d 319 (1970); and *In re McCloud*, 110 R.I. 431, 293 A.2d 512 (1972). But see *Peyton v. Nord*, 78 N.M. 717, 437 P.2d 716 (1968). Thus I agree with the majority that denial of a jury trial in delinquency cases does not contravene Ia.Const. Art. I § 9.

II. *Ia.Const. Art. I § 10.* In relevant part Ia.Const. Art. I § 10 assures an accused the right to speedy and public trial by jury "[i]n all criminal prosecutions, and in cases involving the life, or liberty of an individual * * *." The juvenile's contention under this provision presents an issue of first impression in this Court. Moreover, no other jurisdiction appears to have a similar constitutional provision, assuring the right to a jury trial to the accused not only in criminal prosecutions but in other cases involving life and liberty. Therefore we must decide without assistance of prior decisions whether a juvenile alleged to be delinquent is an "accused" in a case involving the life or liberty of an individual within the contemplation of the framers.

I believe we must approach this task of constitutional adjudication in the light of general principles recently explained in *Rudd v. Ray*, 248 N.W.2d 125, 129–130 (Iowa 1976). We must attempt to ascertain what was in the minds of the framers as indicated by the language used, the object to be attained, or evil to be remedied, and the circumstances at the time of adoption.

We are aided here by the record of the convention which drafted the Constitution of 1857. See W. Lord, Constitutional Debates (1857).

It was initially proposed in the 1857 convention that Art. I § 10 be retained in the same form as in the Constitution of 1946. That provision applied only in criminal prosecutions. See Art. I § 10, Const. of 1846. However, as a result of floor amendments and committee recommendations, language was added to the provision and it was adopted in the following form, with the additions shown in italics:

In all criminal prosecutions, *and in cases involving the life, or liberty of an individual* the accused shall have the right to a speedy and public trial by an impartial jury; to be informed of the accusation against him, *to have a copy of the same when demanded*; to be confronted with the witnesses against him; to have compulsory process for his witnesses; and, to have the assistance of counsel.

The record of the convention shows the language extending the enumerated rights beyond criminal prosecutions was added in reaction against the Fugitive Slave Act as amended by Congress in 1850. See 9 Stat. 462.

Under the Fugitive Slave Act a slaveowner from another state could obtain a "certificate of right" in an ex parte proceeding in his home state and present it in a free state like Iowa as conclusive proof of his right to the return of an alleged fugitive slave. Iowa courts were authorized to conduct a summary trial limited to requiring additional evidence on the issue of identity only, and the accused fugitive was even denied the right to testify.

Strong opposition to the Fugitive Slave Act and slavery existed among the delegates. See *Lord*, supra, at 651–654; B. Shambaugh, Constitutions of Iowa (1934), at 270–271. In speaking against the Fugitive Slave Act, one delegate said:

If the words "due process of law", shall in time be recognized by our judicial tribunals to mean what they really do mean, that no person shall be deprived of life, liberty or property, without a legal proceeding based upon the principles of the common law, and the constitution of the United States—that every man, when his life or liberty are imperilled, shall have the right to be tried, by a jury of his countrymen * * * [—then], sir, that infamous Fugitive Slave Law will become a nullity [sic], and the American people will trample its odious enactments in the dust. *Lord*, supra, at 102.

After the words "and in all cases involving the life or liberty of an individual" had been added to Art. I § 10, one delegate moved to strike them. In his argument he said:

I understand that this provision is inserted for the purpose of providing that instead of the fugitive slave having the right of trial by jury where his labor may be due, he shall have his trial here; which would be equivalent to saying at once, that any slave in the territory of this state shall have the right to assert his freedom, and cannot be remanded back into slavery. That is the true meaning of that clause, I suppose. *Lord*, supra, at 736.

Proponents of the language acknowledged this asserted purpose. One delegate said, "I hold that unless we have the right to make a constitution which will secure to me the right to a jury trial if I am claimed as a fugitive slave, without that right we are not a sovereign people." *Lord*, supra, at 737. Another supported the language on the theory the Fugitive Slave Act violated the United States Constitution. *Lord*, supra, at 738. The motion to strike the language was defeated. No one can doubt from the convention record that the disputed language was added to Art. I § 10 in an effort to nullify the Fugitive Slave Act by giving persons accused as escaped slaves the right to jury trial in Iowa.

We must now decide whether this same language gives a child the right to jury trial in a delinquency action. The juvenile court system was not established in Iowa until 1904 and obviously was not specifically foreseen by the delegates to the 1857 convention. However, because a constitutional provision has a life beyond the mischief which gave it birth, it is still necessary to determine whether the framers intended Art. I § 10 to be applicable in the kind of proceeding at issue here. I do not believe they did.

The parens patriae concept casts the State in a role providing each child coming within the jurisdiction of the juvenile court "the care, guidance, and control that will conduce to his welfare and the best interests of the state, and * * * when he is removed from the control of his parents, * * * care as nearly as possible equivalent to that which he should have been given." § 232.1, The Code. As shown by the Supreme Court opinions in *Kent, Gault, Winship* and *McKeiver* this concept is seriously flawed. Substantial variance exists between theory and practice. However as those cases also show, the juvenile court system survives.

The features which distinguish a delinquency action from a criminal prosecution also help distinguish it from a proceeding involving the right to remove an alleged fugitive slave from the state. Moreover, unlike an accused under the infamous Fugitive Slave Act, the child is not threatened with capricious imposition of depersonalizing servitude. Restraint of liberty in the juvenile proceeding is a means of ameliorative treatment rather than a means of obtaining involuntary labor.

On that basis, recognizing the juvenile court system was unforeseen by the delegates to the 1857 convention, and giving full consideration to the language used, the object to be attained, and the circumstances at the time of its adoption, I do not believe the framers intended Art. I § 10 to reach the kind of process which the juvenile system involves. I do not believe the child in a delinquency proceeding is an "accused" threatened with loss of liberty within the meaning of that provision. Consequently I

agree with the court that it does not create a right to jury trials in delinquency actions.

We have no occasion here to pass on the wisdom of giving the child a right to trial by jury.