**IN THE COURT OF APPEALS OF IOWA**

No. 15-1782
Filed February 10, 2016

**IN THE INTEREST OF K.C. AND J.P.,**
**Minor Children,**

**N.P., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Thomas W. Mott, Judge.

A mother with a history of substance abuse appeals the termination of her parental rights to her thirteen-year-old son and nine-year-old daughter. **AFFIRMED ON CONDITION AND REMANDED.**

Alexander D. Smith of Parrish Kruidenier Law Firm, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

John P. Jellineck of the Polk County Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**TABOR, Presiding Judge.**

This appeal presents the question whether article I, section 10 of the Iowa Constitution extends the right to a jury trial to a mother defending against a petition to terminate her parental rights. The mother contends the juvenile court erred in denying her request to have jurors decide whether to sever the parent-child relationship. She also argues the State did not prove a statutory basis for termination and the court should have kept the family intact because her two children lived with relatives, her teenaged son opposed the termination, and she had a close bond with the children.

Because the state constitutional provision listing "rights of persons accused" does not apply to child welfare cases, we reject the mother's jury trial argument. We also find clear and convincing evidence in the record to support terminating the mother's relationship with her two children under Iowa Code section 232.116(1)(f) (2013). Further, we conclude the factors in section 232.116(3) do not outweigh the benefits of achieving permanency for K.C. and J.P. Accordingly, we affirm the termination order. But we do so only on the condition that the proceedings complied with the federal and state Indian Child Welfare Acts (ICWAs). Because the record raises questions concerning the mother's Indian heritage, but does not show ICWA compliance, we remand for further proceedings.

I.     **Background Facts and Proceedings**

The Department of Human Services (DHS) removed J.P. and K.C. from their mother's care in April 2014 after she was arrested for child endangerment, possession of methamphetamine, and theft of a motor vehicle. The mother did

not contest the removal in the juvenile court. The DHS placed thirteen-year-old J.P. with his paternal grandmother and placed nine-year-old K.C. with her maternal grandmother.

The juvenile court adjudicated J.P. and K.C. as children in need of assistance (CINA) in June 2014. The juvenile court noted the mother's long history of substance abuse.[1] Her addictions had resulted in her three older children, now adults, being removed from her care and placed under DHS supervision in 2001.[2] The mother also experienced domestic violence perpetrated by J.P.'s father. J.P. and K.C. remained in their grandmothers' care throughout the CINA case.

In July 2014, the mother was arrested for possession of drug paraphernalia after police stopped her for erratic driving. After her arrest, she submitted to substance abuse and mental health evaluations at United Community Service (UCS). The UCS therapist diagnosed her with cannabis dependence and amphetamine dependence, as well as depression and PTSD. The therapist developed a treatment plan for the mother. The mother was arrested again in August 2014 for illegal possession of prescription drugs and a probation violation. She was placed at the women's residential correctional facility until April 2015, when she was discharged to supervised probation. Her employment and housing were unstable after her release. She had once-a-week supervised visitation with K.C. and J.P.

---

[1] The forty-year-old mother testified to starting her marijuana use at age sixteen and methamphetamine use at age nineteen.
[2] The mother had a forgery conviction in 2001.

On April 22, 2015, the State filed a petition to terminate the mother's parental rights.[3]  The petition cited Iowa Code section 232.116(1)(d), (f), (g), and (*l*) as grounds for termination.  The juvenile court held a termination hearing on September 10, 2015.  The court issued its decision terminating parental rights on October 8, 2015, relying on all grounds cited in the State's petition.  The mother filed a petition on appeal.

## II. Scope and Standards of Review

We review de novo juvenile court cases involving the termination of parental rights.  *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).  We will uphold a termination order if it is supported by clear and convincing evidence of at least one statutory ground under section 232.116(1).  *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).  "Clear and convincing" proof means we see no "serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence."  *Id.*  We likewise review constitutional claims de novo.  *In re C.M.*, 652 N.W.2d 204, 209 (Iowa 2002).  To the extent that this case involves interpretation of chapter 232B, our review is for correction of errors at law.  *See In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014).

## III. Analysis of Mother's Claims

### A. Right to Jury Trial

Before the termination trial, the mother's attorney filed a motion for a jury trial and jury demand, citing article 1, section 10 of the Iowa Constitution's Bill of

---

[3] The petition also sought to terminate the parental rights of K.C.'s father, but he is not a party to this appeal.  The rights of J.P.'s father had been previously terminated.

Rights.[4]   That section—entitled "Rights of persons accused"—provides as follows:

> In all criminal prosecutions, and in cases involving the life, or liberty of an individual the accused shall have a right to a speedy and public trial by an impartial jury; to be informed of the accusation against him, to have a copy of the same when demanded; to be confronted with the witnesses against him; to have compulsory process for his witnesses; and, to have the assistance of counsel.

Iowa Const. art. I, § 10.

The mother argued the framers of the Iowa Constitution intended the phrase "in cases involving the life, or liberty of an individual" to extend the jury-trial right beyond criminal prosecutions.  She urged the phrasing and history of article I, section 10 "demands that parents have the right to a jury trial in termination of parental rights cases."

In concluding the state constitution did not guarantee parents the right to a jury trial in termination proceedings, the juvenile court cited two delinquency cases decided by the Iowa Supreme Court.  *See In re Johnson*, 257 N.W.2d 47, 50 (Iowa 1977) (concluding "it is not constitutionally required to inject a jury into the juvenile court setting"); *see also In re A.K.*, 825 N.W.2d 46, 51 (Iowa 2013) (observing neither statutory nor constitutional provisions guarantee juveniles the right a jury trial).  The juvenile court ruled it must "hear and decide" the case without a jury.

---

[4] Neither in the juvenile court nor on appeal does the mother cite article I, section 9 of the Iowa Constitution, which provides: The right of trial by jury shall remain inviolate; but the general assembly may authorize trial by a jury of a less number than twelve men in inferior courts; but no person shall be deprived of life, liberty, or property, without due process of law."

On appeal, the mother contends the juvenile court's ruling was in error. She asserts the *Johnson* holding "should probably be revisited" but, in the meantime, asks us to limit its application to delinquency cases. She points to case law describing the right to parent as a "fundamental liberty interest" protected by the state constitution. *See Callender v. Skiles*, 591 N.W.2d 182, 190 (Iowa 1999). From that premise, she claims the action to terminate her parental rights is a case involving the liberty of an individual, triggering her right to a jury trial under article I, section 10.

In response, the State argues we should extend the reasoning of *Johnson* to termination-of-parental-rights hearings. The *Johnson* majority opined the drafters' 1857 reference to liberty interests in article I, section 10 "should not blindly mandate an absurd result because our forefathers had not yet seen fit to establish a separate juvenile court system." 257 N.W.2d at 50. The State asserts even stronger reasons exist for not allowing jury trials in child welfare cases than in delinquency proceedings.[5] For instance, a juvenile court judge is familiar with the family by the time of the termination hearing and is in the best

---

[5] Only a handful of states currently permit or require jury trials in termination-of-parental-rights cases. *See In re Isaiah H.*, 828 N.W.2d 198, 219 n.8 (Wis. 2013) (Ziegler, J., dissenting) (listing Oklahoma, Texas, Virginia, Wisconsin, and Wyoming). Among those states, courts in Oklahoma and Texas have interpreted their state constitutions as providing the right to a jury trial in termination cases. *See, e.g., In re J.N.F.*, 116 S.W.3d 426, 432 (Tex. App. 2003) (holding prison inmate was entitled to jury trial in action to terminate his parental rights); *A.E. v. State*, 743 P.2d 1041, 1045–46 (Okla. 1987) (ruling parents were entitled to a jury trial under an amendment that enlarged the state constitutional right to jury trial beyond its scope under common law and expressly provided for a jury trial in juvenile proceedings). In Virginia, Wisconsin, and Wyoming, a parent's right to a jury trial in a termination-of-parental-rights case is statutory, not constitutional. *See Edwards v. Arlington Cnty.*, 361 S.E.2d 644, 655 (Va. 1987) (discussing discretionary nature of right to "advisory jury" in parental rights termination hearing under Virginia Code section 16.1-296); *Isaiah H.*, 828 N.W.2d at 213 (citing Wis. Stat. § 48.01(1)); *Matter of G.P.*, 679 P.2d 976 (Wyo. 1984) (citing Wyo. Stat. § 14-2-312).

position to make findings of fact and a determination about the children's best interests. Moreover, exposing the facts of a child welfare case to a jury would violate the confidentiality requirement.

The State's points are well-taken, but we can reject the mother's argument based on the language of article I, section 10—specifically its reference to "the accused." Our supreme court has held article I, section 10 "only applies to criminal proceedings." *Atwood v. Vilsack*, 725 N.W.2d 641, 650–51 (Iowa 2006) ("It protects only the rights of an 'accused,' not the rights of an individual facing potential civil commitment pursuant to Iowa's SVP statute."). In *Johnson*, a specially concurring justice reasoned that the child in a delinquency proceeding was not "an 'accused' threatened with loss of liberty" within the meaning of article I, section 10. 257 N.W.2d at 54 (McCormick, J., specially concurring) (explaining restraint of liberty in juvenile proceeding was means of "ameliorative treatment"). Like individuals subject to civil commitment and juveniles subject to delinquency adjudication, parents responding to a petition to terminate their parental rights are not "persons accused" within the meaning of article I, section 10. Accordingly, the juvenile court was correct in denying the mother's request for a jury trial.

### B.    Statutory Ground for Termination

Where, as here, the juvenile court terminates a mother's parental rights on more than one statutory ground, we may affirm if any ground is supported by clear and convincing evidence. *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). We focus on paragraph (f), which applies when a child (1) is four years old or older; (2) has been adjudicated CINA; (3) has been removed from

the physical custody of the parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days; and (4) at the present time cannot be returned to the parent's custody. Iowa Code § 232.116(1)(f). Children cannot be returned to a parent's care if they would remain CINA or would be at risk of adjudicatory harm. "Present time" is the time of the termination hearing. *See In re C.B.*, 611 N.W.2d 489, 494–95 (Iowa 2000); *see also In re A.M.S.*, 419 N.W.2d 723, 726 (Iowa 1988).

In her petition on appeal, the mother argues the State did not prove by clear and convincing evidence that her children could not be returned to her care. She asserts the State did not provide evidence that she currently was using drugs or that her mental health issues were "unresolved or causing problems." The mother took a different stance at trial. She testified she did not believe she was ready for her children to come home with her at the time of the termination hearing, but she thought "working towards them being able to come back with me is a very strong possibility." When asked how long it would take her to be ready to resume care, she responded that it was not a "fair question" because she did not know how long.

We find clear and convincing evidence in the record to support termination under paragraph (f). By the mother's own admission, the children could not be safely returned to her care at the time of the termination hearing. The State did not have evidence regarding recent substance abuse because the mother refused nine requests from the DHS to undergo drug testing by means of a sweat-patch test. The mother testified she had heard "too many stories about

false positives," but she now realized she should have complied with the DHS case plan. She acknowledged her recent work history and housing were unstable. She remained on probation on the methamphetamine possession conviction until May 2016. The mother had not moved beyond weekly supervised visitations with her children. She had the opportunity for more contact with K.C. but did not take advantage of that time with her daughter because she did not get along with her own mother, who was caring for K.C. The juvenile court acted appropriately in terminating her rights under section 232.116(1)(f).

### C. Section 232.116(3) Factors

The mother contests the juvenile court's finding that "[n]one of the possible conditions where the court need not order termination applies to the situation of either of these two children." The mother claims three factors under section 232.116(3) provide cause for not terminating. First, both children live with their grandmothers. *See* Iowa Code § 232.116(3)(a) ("A relative has legal custody of the child."). Second, thirteen-year-old J.P. objected to the termination of her parental rights. *See id.* § 232.116(3)(b) ("The child is over ten years of age and objects to the termination."). And third, "both children would suffer negative mental health repercussions if they lost their relationship with their mother." *See id.* § 232.116(3)(c) ("There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.").

None of the permissive factors under section 232.116(3) required the juvenile court to forego termination of the mother's relationship with the children.

*See In re P.L.*, 778 N.W.2d 33, 38 (Iowa 2010) (clarifying factors were not mandatory). The DHS placed the children with their grandmothers during the course of the CINA proceedings, but the grandmothers did not have "legal custody" as required under section 232.116(3)(a). *See A.M.*, 843 N.W.2d at 113. While J.P. told his therapist he hoped the court would allow him to return to his mother's care, he was not able to verbalize for the therapist "why he thought that should happen or how returning to mom may be in his best interest." The therapist also testified J.P. had not consistently held that view and had at different times during the CINA case expressed a preference for other placements. The therapist did not make a recommendation concerning termination, but testified he was concerned that prolonging the uncertainty would not be in J.P.'s best interest. J.P. had recently engaged in self-harming behaviors that required treatment, and the therapist believed the pending CINA case contributed to J.P.'s anxiety. We agree with the juvenile court's conclusion that J.P.'s "mixed feelings" about the termination did not constitute a sound basis for denying the State's petition.

Finally, the record does not contain clear and convincing evidence that termination would be detrimental to J.P. and K.C. due to the closeness of their relationship with their mother. The DHS worker testified they love their mother and she loves them. The worker also acknowledged the termination will result in "some disappointment" for the children. But the evidence did not show the children's immediate disappointment would pose a long-term detriment. In fact, the mother endorsed the children's current placements with their grandmothers. She testified J.P. was doing "wonderfully" with his paternal grandmother and "he

belongs where he is." She also agreed K.C. receives a great deal of support from her maternal grandmother. The mother insightfully testified: "I know this has gone on a long time which I don't think is good for the children." We agree with the juvenile court that the children's feelings of disappointment about the termination of their mother's parental rights do not weigh heavily against the decision to provide them a permanent, adoptive home, likely with their respective grandmothers.

## IV. Compliance with Indian Child Welfare Act

Finally, we raise sua sponte an issue concerning compliance with the state and federal ICWAs. See 25 U.S.C. §§ 1901–63 (federal ICWA); Iowa Code ch. 232B (state ICWA); see also Matter of N.A.H., 418 N.W.2d 310, 311 (S.D. 1988) (holding ICWA is "primarily a jurisdictional statute" and appellate courts "must examine jurisdictional questions whether presented by the parties or not"). The mother testified at the termination hearing that she "get[s] money from the Indian reservation" in the amount of $600 to $1000 per month. The juvenile court quoted this testimony in its termination order. But the order did not mention compliance with ICWA. See Iowa Code § 232B.5(4) (providing court "shall establish in the record that the party seeking . . . termination of parental rights over . . . an Indian child has sent notice by registered mail" to the tribe).

In the record available to us on appeal, we found four references to the mother's Indian heritage. First, when applying for the order of temporary removal under section 232.78, the DHS filed an ICWA Affidavit on April 15, 2014, stating that "Apache is the tribal affiliation of the child's mother." Second, in a July 22, 2014 report to the court, DHS worker Alaina Gage wrote: "ICWA will have to be

explored, even though [the mother] was adopted she reports that she believes that she is part of an Apache tribe in New Mexico." Third, an exhibit from LabCorp, which confirmed paternity for K.C.'s father, noted the mother was an America Indian.

Fourth, in exhibits from the 2001 CINA proceedings involving the mother's older children, the county attorney notified the Jicarilla Apache Tribe in New Mexico of the juvenile court proceedings, and a child protection worker contacted the tribe's intake specialist to inform him that mother agreed to temporary placement with the maternal grandmother.

In a dependency court proceeding in which the court knows or has reason to know the children are Indian children, the federal ICWA requires notice to the child's tribe. 25 U.S.C. § 1912(a). Likewise, the tribal notice provisions of the Iowa ICWA require the juvenile court to notify the proper Indian tribe whenever it has reason to know that an Indian child may be involved in an involuntary termination. *In re R.E.K.F.*, 698 N.W.2d 147, 150–51 (Iowa 2005) (citing Iowa Code § 232B.5(4)).

Nothing in the record from the current CINA and termination cases indicates the State or the juvenile court met the tribal notice requirements or other mandates under chapter 232B. Chapter 232B is intended to protect Indian families and tribes. *In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011). Our legislature enacted this chapter to clarify policies and procedures regarding implementation of the federal ICWA. *In re J.L.*, 779 N.W.2d 481, 485–86 (Iowa Ct. App. 2009). "The ICWA has a dual purpose—to protect the best interests of a child and preserve the Indian culture." *D.S.*, 806 N.W.2d at 465 (noting ICWA

must be applied even where no evidence shows children were raised in Indian culture).  Our courts strictly construe the provisions of ICWA.  *Id.*

Because we cannot tell from the record before us if K.C. and J.P. were determined to be Indian children under sections 232B.3(6) and 232B.4, or if the State provided adequate notice to the tribe under section 232B.5, we can only conditionally affirm the termination order.  *See In re R.E.K.F.*, 698 N.W.2d at 150–51; *see also In re L.B.-A.D.*, No. 11-0456, 2011 WL 2112452, at *8 (Iowa Ct. App. May 25, 2011).

We remand the case to the juvenile court for a determination if the State sent proper notice to the tribe under the federal and state ICWAs.  If the tribal notice requirement was satisfied and the children were not determined to be Indian children, the juvenile court's original termination order will stand.  If the notice requirement was not satisfied, the juvenile court shall direct the State to send notice concerning the children's tribal membership.  If the tribe fails to respond within the appropriate timeframe or replies and determines the children are not eligible for tribal membership, the termination order will stand.  If the tribe responds and intervenes, reversal of the termination order and further proceedings consistent with the ICWA requirements will be necessary.  We do not retain jurisdiction.

**AFFIRMED ON CONDITION AND REMANDED.**